ROBERT LITTLE *vs.* ANTHONY WILLFORD and others.

October 19, 1883.

**Trust—Beneficiaries not Disclosed—Charitable Uses Abolished in this State.**—The plaintiff, in pursuance of previous negotiations with certain members of a religious association, known as "The Trustees of M. E. Church for Elgin Circuit," and at their request, executed a deed of a lot for a church building. The deed on its face purported to convey the land to certain persons as parties of the second part, described as "trustees of M. E. Church," (and who were, with one exception, trustees of such association,) "in trust that said premises shall be used, maintained, and disposed of as a place of divine worship for the use of the ministry and membership of the Methodist Episcopal Church in the United States," etc. Thereupon the members of such religious association, acting in its behalf, took possession under the deed, and in good faith proceeded to erect the building thereon in controversy, with the knowledge and approval of the plaintiff, and have ever since continued in possession with his acquiescence, until this action was brought, in which he claims to be the owner of the premises, including the building, and seeks to restrain the defendants, who represent such religious association, from severing and removing it from the lot. *Held*, that no title passed by the deed. It did not vest in the trustees as grantees absolutely, because it is apparent that the grant was attempted to be made in trust. It did not vest, by force of the statute of uses, in beneficiaries or *cestuis que trust*, for none are disclosed by the deed, and the religious association in question, as a corporation or otherwise, is not named. The trust declared, and sought to be created, is general and indefinite in its character, and may be denominated a "charitable use." Such trusts are not among those recognized by the statutes of this state, but are abolished.

**Fixtures—Right of Removal.**—As respects the right to remove fixtures and buildings erected by one person on the land of another, the rule that

whatever is annexed to the soil becomes part of the inheritance is sub-
ject to several exceptions, growing out of the interests of trade, and the
equitable rights and relations of parties, and a distinction is recognized
between the case of an unauthorized erection of structures, and improve-
ments made with the consent of the land-owner.

**Same—Removal by Licensee.**—Under the circumstances of this case, *held*,
*also*, that the building in controversy must be adjudged to have been
erected under the license and by the authority of the plaintiff, and that,
as against the defendants, or the association represented by them, the
plaintiff has no equities to claim and appropriate as his own the building
in controversy, erected on the faith of such license. And it not being
questioned that the defendants are acting under proper authority, a court
of equity ought not to interfere to restrain them from severing and re-
moving the church building to another site, to be used for the same pur-
pose, and under the same denominational control.

Plaintiff brought this action in the district court for Olmsted
county, alleging title in fee in himself to a certain described lot of
land in that county, and that the defendants, in March and April,
1882, "unlawfully and wrongfully, and with strong hand, entered
upon said land, and broke, took down and dismantled the buildings
thereon, and took away and carried away the materials thereof, and
the seats and fixtures attached thereto, and converted the same to
their own use, against the will of the plaintiff, and to his damage
$1,200." He further alleges "that the frame and part of the struct-
ure of a valuable edifice still remain thereon," which the defendants
threaten to pull down and remove, etc., and that they will do so and
commit great and irreparable waste, unless restrained by the court.
Jugdment is demanded for an injunction and for $1,200 damages.

The action was tried by *Start*, J., who found that plaintiff was
the owner of the land and building, and that the building had been
erected thereon as stated in the opinion, and that by defendants' acts
the premises had been injured and reduced in value in the sum of
$556. Judgment was ordered, perpetually enjoining the defendants
from pulling down or removing the building or materials; but the
court held plaintiff not entitled to recover his damages already sus-
tained, for the reason that while he could maintain his suit for
equitable relief without possession, his alleged cause of action for

damages was substantially trespass *quare clausum fregit*, the gist of which is the injury to the possession; and that plaintiff, not having actual or constructive possession, cannot recover for the injury to the realty in this action, whatever his rights may be in another form. Judgment was entered accordingly, from which both the plaintiff and the defendants appeal.

*Chas. C. Willson*, for plaintiff.

*Jones & Gove* and *Lloyd Barber*, for defendants.

VANDERBURGH, J.   On the second day of May, 1868, the plaintiff attempted to convey a building site, to be occupied by a religious association, known as "The Trustees of the Methodist Episcopal Church for the Elgin Circuit," for a church building.   The same society also had a place of worship in the adjoining county of Wabasha, and were a *de facto* organization, in conformity with the usages and discipline of the Methodist Episcopal Church, and had previously attempted to become incorporated in that county, by the election of trustees, and the execution and record of the proper certificate, which, however, was informal and defective.   Such corporate organization would seem, however, to have been validated by subsequent legislation. Laws 1881, (Ex. Sess.) *c.* 65.

The parties of the second part in the plaintiff's deed were, with one exception, trustees of the asssociation, and were described therein as "Trustees of M. E. Church" of Olmsted county.   The deed, however, upon its face purports to convey the land in "trust to be used, maintained, kept, and disposed of as a place of divine worship, for the use of the ministry and membership of the Methodist Episcopal Church in the United States."   The lot was not worth to exceed $10, and would seem to have been intended to be donated to the association, but the deed appears to have been made in trust in this particular form, because so required by the rules of the Methodist Episcopal Church.   Thereupon the association took possession of the premises, and proceeded to erect thereon, in the year 1868, the church building in controversy.   Upon its completion it was dedicated, and thereafter used, as a place of public worship regularly for upwards of 10 years, but, as the trial court finds, "for the past three years it has not been so used except at rare intervals, but said association

has been in the continuous possession of said premises ever since said church was built."

In pursuance of formal action by the association, authorizing the removal of the building to another site, the defendants, as its agents and representatives, were proceeding so to do, and had already removed a portion thereof, when this action was brought by the plaintiff, claiming to be the owner of the lot and building, on the ground that his deed was invalid, and the title of the premises, therefore, still remained in him.

1. Whatever may have been the actual intention of the parties, this deed, upon its face, failed to convey the land to the association, whether it is a corporation or not. The deed was not made to the association or its members, or in trust for them. To be valid, under our statute of uses, it must either be such that the title may be vested by force of the statute in beneficiaries entitled to take, and disclosed in the deed, or in trustees, for such purposes as the statute permits. Here the trust is for the membership and ministry of the Methodist Episcopal Church, (which is not incorporated,) and is public and general in its character, and may be denominated a charitable use. Such trusts are not recognized in the statute, and it is expressly declared, in the first section of the chapter upon uses and trusts, that, except as thereby authorized, they are abolished. The subject has undergone elaborate discussion in New York under an act substantially like our own, and it may be regarded as settled in that state, as well as in other states which have adopted similar statutory provisions, that such uses are abolished by our statute. Willard, Eq. Jur. (Potter's Ed.) 569; 2 Pom. Eq. Jur. § 1029; *Holmes* v. *Mead*, 52 N. Y. 332; *Meth. Church* v. *Clark*, 41 Mich. 730.

The legislative policy of this state is not only indicated by the terms of this statute, but by the provisions that are made for the incorporation of religious and other societies under the general law, and for the direct ownership and control of property granted to them, or for their benefit. Pub. St. 1858, *c.* 17, §§ 20, 21, 39; Gen. St. 1878, *c.* 34, § 214, etc. The purpose is sufficiently manifest, (as respects real estate, certainly,) to discourage the accumulation of property in the hands of trustees, subject to an uncertain disposition, and to place it

under the direct control of those entitled to the beneficial interest in it, except in the particular cases expressly declared in the statute. The sections of the statute last above referred to recognize inchoate and equitable rights in such associations to property acquired by or intended to be granted to them, the control of which, upon their becoming incorporated, passes to the corporate body. And if the building in question may, under the circumstances, be separately owned and severed from the land, the association, if incorporated subsequent to its erection, would be entitled to it; and if not incorporated, yet, for the purpose of this action, as personalty, it might be considered and treated as the property of the members of the association, and the question as to the number interested, or their respective interest therein, is one which does not concern the plaintiff in this action. *Keyser* v. *School-District*, 35 N. H. 477; *Curtiss* v. *Hoyt*, 19 Conn. 154, 167.

2. And this brings us to consider the point raised by the defendants, that by reason of the acquiescence and license of the plaintiff the association is entitled to be considered as the owner of the building. The uncontradicted evidence in defendants' behalf, to the effect that the plaintiff expressly consented to the removal of the building, would be quite material if the fact had been alleged and found. But as it was not alleged, the testimony can only be considered, if at all, as evidence of conduct or admissions on plaintiff's part, tending to establish his acquiescence in their occupancy, and his knowledge of the facts constituting their equities. *Morris* v. *French*, 106 Mass. 326. But, apart from this question, the license and consent of the plaintiff, which were sufficiently pleaded, to the occupation of the land and the erection of the building thereon, may be legally inferred from the facts found in this case. While the deed did not run to, or purport to convey any right or interest to, the parties by whom the building was erected, it was doubtless understood by all parties, including the plaintiff, to be an act authorizing its erection upon the land, as was done; the plaintiff meanwhile acquiescing, with knowledge of the facts. That an entry and improvements made under such circumstances are properly adjudged to be with the license of the owner of the land, is well settled. *Van Deusen* v. *Young*, 29 N. Y. 930; *Harris* v. *Frink*, 49 N. Y. 24; *Eggleston* v. *N. Y. & H. R. Co.*, 35 Barb.

162, 169; *White* v. *Fuller*, 38 Vt. 193, 205. The supposed ignorance of the parties as to the effect of the deed does not make the transaction any less a license. *Walter* v. *Post*, 4 Abb. Pr. 382.

As to plaintiff's right to the improvements, the defendants' equities are not less strong than they would have been had plaintiff expressly licensed the society to erect a church upon the lot in question. Where the authority for placing a building upon the land of another rests upon his license, and the consideration of the case is uninfluenced by the unreasonable laches of the licensee, or other special circumstances, he is regarded as continuing to be the owner of the building, and equitably entitled to remove the same if he elects, and if such removal be practicable, and works no serious injury to the land or premises of the licensor to which it was annexed. 2 Am. Lead. Cas. (5th Ed.) 561–563; *Keyser* v. *School-District*, 35 N. H. 477; *Dame* v. *Dame*, 38 N. H. 429; *Barnes* v. *Barnes*, 6 Vt. 388; *Wilgus* v. *Gettings*, 21 Iowa, 177; *Northern C. R. Co.* v. *Canton Co.*, 30 Md. 347; *Fuller* v. *Tabor*, 39 Me. 519; *Dietrich* v. *Murdock*, 42 Mo. 279; *Bachelder* v. *Wakefield*, 8 Cush. 243; *Curtis* v. *Riddle*, 7 Allen, 185; *Howard* v. *Fessenden*, 14 Allen, 124; *Weathersby* v. *Sleeper*, 42 Miss. 732; *Witherspoon* v. *Nickels*, 27 Ark. 332; Ewell on Fixtures, 71; 1 Bing. Real Prop. 467–469.

The general and strict common-law rule is that whatever is annexed to the soil becomes part of the inheritance, but it is subject to several exceptions growing out of the interests of trade and the equitable relations of parties. The authorities all distinguish between an unauthorized erection of buildings upon the land of another, and improvements made thereon by his consent, as respects the title to the improvements or the beneficial interest therein. Tyler on Fixtures, 88, 81. So, also, a distinction is to be noted between a license and a contract for the purchase of land, under which buildings are erected. In the latter case, the builder's rights are determined by the nature of his contract, and, upon his default, the fixtures go with the land. As to the rule in several classes of cases, see *Howard* v. *Fessenden*, 14 Allen, 124. But here the licensees obtained no interest in the land, and no right to acquire any, and the plaintiff did not agree to give them any. The building was not erected under a

contract, but under an implied license. It must have been the understanding of all parties that the building was not to be his, or for the improvement of his land, but the property of the association by the members of which it was erected, and subject to their control and disposal for religious and denominational purposes, with the sanction of the proper authority, under which it is not questioned that they acted. The case would not have been essentially different if he had made them a parol gift of the lot, which, being void as a grant, would have been valid as a license, and would have been irrevocable as to their right to the property placed thereon upon the faith of the license, and susceptible of being removed. *Johnson* v. *Skillman*, 29 Minn. 95; 2 Am. Lead. Cas. 563. And it would make no difference in such case that the improvements may have been made in the reasonable expectation of permanent occupancy, growing out of the trust and confidence reposed in the licensor as to the duration of the privilege or the supposed validity of the grant. The right to remove structures under such circumstances is strictly equitable in its nature, but, as between the parties, it has come to be recognized at law. 2 Am. Lead. Cas. (5th Ed.) 589.

That the permanent nature of annexation to the soil does not preclude the exercise of the right of removal is clear, because it is settled that, if the owner of the soil agree to permit buildings so erected to be removed, the circumstance that the property is so situated or attached that a severance is essential in order, strictly speaking, to reconvert it into personalty, is immaterial; and, as between the parties, the right of removal, as the property of the builder, is saved to him. *Stout* v. *Stoppel*, 30 Minn. 56; Tyler on Fixtures, 81; 2 Am. Lead. Cas. 562, 563. As between certain parties they may not be severed; as to others the law permits it. *Howard* v. *Fessenden, supra*. Where actual removal is impracticable or inadequate as a protection to the licensees, other equitable remedies may be invoked, where the circumstances warrant, as in the nature of specific performance, or an injunction founded on the doctrine of equitable estoppel as against the licensor. And in some cases compensation has been decreed as a condition of the revocation of a license.

It may be suggested that the question as to the right to remove

structures erected under a license does not arise until the licensees are disturbed in their occupancy thereunder by a revocation. As respects the equitable remedies just referred to, this would clearly be the rule; but we do not so understand it as to the right to remove buildings or fixtures. We know of no reason why it should be so, unless in cases where special circumstances should control the exercise of the right and render it inequitable. Ordinarily, however, it is for the interest of the licensee to continue the occupancy until revocation, and the question does not arise till such time. In *Powers* v. *Dennison*, 30 Vt. 752, 755, it was held that while the license was in force "the defendants would have been justified in entering upon the premises and removing the buildings" erected under it, but that a conveyance by the owner of the land to an innocent purchaser, without notice of the defendants' rights, passed the improvements as part of the inheritance. And see *Cayuga Ry. Co.* v. *Niles*, 13 Hun, 170; *Ham* v. *Kendall*, 111 Mass. 297; *Alexander* v. *Touhy*, 13 Kan. 64. The death of the plaintiff or a transfer of the land would have constituted a revocation of the license, as well as actual notice by him. If, then, the defendants would have been justified in removing the building upon the happening of any event constituting in law a revocation of the license, there is nothing in the case as presented which suggests any good reason why they should not be permitted to exercise such right prior thereto.

The plaintiff's claim rests solely upon his legal title to the lot, in itself of nominal value, without any suggestion of any other injury, legal or equitable, from the severance of the structure, than the loss of the latter. On the other hand, the equitable ownership of the building might be of very little value to the defendants, or the association represented by them, if obliged to wait an indefinite time, particularly as the property in its present location appears to have fallen into disuse. If the parties composing the association are entitled, under the circumstances, to be considered the equitable owners of the building, there is nothing in the plaintiff's case which in good conscience should warrant a court of equity in interfering to enjoin them from removing it, or its materials, to another site, by the authority of the church interested. It must either be adjudged that

they have no right to the building, but that the same is absolutely and unconditionally a part of the inheritance, under the circumstances,—a doctrine which we think is not generally accepted by the courts in this country, (2 Am. Lead. Cas. 561, etc.,)—or the court, if it does not grant affirmative relief to the licensees, ought not, at least, to interfere actively against them, to enforce a claim which the plaintiff, *ex æquo et bono*, is not entitled to. *Wilgus* v. *Gettings*, 21 Iowa, 177; Story, Eq. Jur. §§ 388, 1237; Broom's Leg. Max. 402.

It is not contended that defendants are in under any contract whose stipulations they have violated, or that plaintiff has parted with any consideration by reason of which it would be inequitable for them to retain the building, or that he has any special equities growing out of the circumstances of its erection; but his claim for relief against the defendants is based solely upon his alleged legal ownership of the property, and his suit on such ground is in itself a revocation of the license. *Lockhart* v. *Geir*, 54 Wis. 133. In *Northern C. R. Co.* v. *Canton Co.*, and *Dietrich* v. *Murdock, supra*, structures intended to be of a permanent character were erected under a mistake of law as to the acquisition of an easement in the land, but with the knowledge and acquiescence of the land-owner; *held* a license, and that the licensees were entitled to the improvements which had by them been annexed to the realty. *Wagner* v. *Cleveland & T. R. Co.*, 22 Ohio St. 563; *Fuller* v. *Tabor, supra;* Hill on Fixtures, § 3.

We are, therefore, of the opinion that the plaintiff was not entitled to the relief asked.

The court below decided that plaintiff was entitled to an injunction restraining the further interference by the defendants with the building, but denied his right to recover the value of the portion thereof already taken away. If plaintiff was entitled to the injunction, we think he might also join a cause of action in the nature of an action on the case for the injury to the inheritance. Pomeroy on Remedies, § 232, and notes. But if the court would not interfere in plaintiff's behalf by injunction to prevent the removal, it should not permit a recovery in damages because of its having already been effected. *Harris* v. *Alcock*, 10 Gill & J. 226, 252.

Judgment reversed.