VICTOR M. WATKINS and Another v. CHARLES H. BIGELOW and Others.[1]

*October 28, 1904.*

Nos. 14,049, 14,050—(92, 93).

**Title of Act.**

If the title to a statute be a restrictive one, carving out for consideration a part only of a general subject, legislation under such title must be confined within the same limits. All provisions of an act outside of such limits are unconstitutional, even though they might have been included in the act under a broader title.

**Same—Constitution.**

Rule applied, and *held*, that chapter 132, p. 188, Laws 1903, relating to trusts, is unconstitutional, because the subject-matter of the act is not expressed in its title.

**Gift to Corporation.**

A gift by deed, devise, or bequest to an existing corporation, or to one to be thereafter organized within the time limited by law, with directions or conditions as to the use or management of the subject-matter of the gift which are reasonably consistent with the corporate purposes of the donee is not a gift in trust, but an absolute one to the corporation, within the meaning of our statute of uses and trusts.

**Charitable Corporation.**

Chapter 158, p. 343, Laws 1895, relating to the organization of corporations to administer and furnish relief and charity for the worthy poor, does not authorize such a corporation to take property by gift, to hold in trust for purposes not otherwise authorized by law. It does, however, authorize the corporation to take as owner, by gift, any property, subject to such conditions and limitations as are not inconsistent with its corporate purposes, as the donor may impose.

[1] Reported in 100 N. W. 1104.

**Will—Uses and Trusts.**

> The will here in controversy is valid as an executory devise to a corporation to be organized in the future to furnish relief and charity to the worthy poor of the city of St. Paul. It is not an evasion of the laws of the state relating to uses and trusts.

Action in the district court for Ramsey county by Victor M. Watkins and Charles N. Bell, as surviving trustees under the will of Amherst H. Wilder, deceased, to obtain a construction of certain provisions of the will. Charles H. Bigelow, a trustee, and others who appeared on the face of the will to be interested, were made parties defendant. Henry D. Spencer and others, claiming to be the heirs of Fanny S. Wilder, the widow of Amherst H. Wilder, filed a complaint of intervention and a petition for leave to answer the original complaint and defend in their own interest. The ground of intervenors' complaint was the alleged invalidity of the wills of both Amherst H. Wilder and Fanny S. Wilder whereby an attempt was made to create certain void charitable trusts, which failing, the property would descend to the intervenors. From an order, Bunn, J., denying intervenors' motion for leave to appear and defend the action, and striking out the complaint of intervention, and from a judgment in the action entered pursuant to the findings and order of Bunn, J., construing the will, intervenors appealed. Order affirmed. Appeal from judgment dismissed.

*Clapp & Macartney, Warner & Kennedy,* and *Mastick, Van Fleet & Mastick,* for appellants.

If the pleadings on the part of the appellants show that they have an interest in the estate of Fanny S. Wilder, then they are entitled to defend this action, either as intervenors or as defendants in their own right. Bennett v. Whitcomb, 25 Minn. 148; Wohlwend v. J. I. Case T. M. Mnfg. Co., 42 Minn. 500; Smith v. City of St. Paul, 65 Minn. 295; Becker v. Northway, 44 Minn. 61; Melick v. Melick, 17 N. J. Eq. 156.

Under the statutes concerning uses and trusts, as they stood prior to the attempted amendment of 1903, the charitable trusts sought to be created by the will of Fanny S. Wilder are void, because the purposes are not those for which private trusts can lawfully be created,

and because the beneficiaries are not ascertained. Lane v. Eaton, 69 Minn. 141; Shanahan v. Kelly, 88 Minn. 202.

Chapter 132, Laws 1903, so far as it relates to trusts other than those to be administered by an incorporated city or village, is unconstitutional and void; for the only subjects included in, or germane to, the title of that act, are trusts to be administered by incorporated cities or villages. Const. art. 4, § 27; State v. Porter, 53 Minn. 279; Cooley, Const. Lim. (5th Ed.) 179; State v. American, 106 La. 553.

The act of April 17, 1895, chapter 158, does not authorize the trusts in question or any trusts, and it could not constitutionally do so under its title. People v. Allen, 42 N. Y. 404, 419, 420; Igoe v. State, 14 Ind. 239; Grubbs v. State, 24 Ind. 295; Com. v. Hazen, 207 Pa. St. 52; Bryan v. Board, 90 Ky. 322; Rogers v. Manufacturers, 109 Pa. St. 109.

The disposition of property for purposes of charity, made in the will of Fanny S. Wilder, is wholly in trust; and that will contains no absolute gift of that property to the corporation, therein mentioned. No particular words are essential to create a trust. It is not necessary that the words "trust" or "trustee" be used; nor, if they are used, do they necessarily create a trust. A trust arises whenever it appears from the language of the instrument making a gift that a confidence is reposed in the donee that he will carry out the expressed intentions of the donor; and, from that circumstance alone, equity will impose upon the donee an obligation to carry out those intentions. 1 Perry, Trusts (5th Ed.) § 2; 2 Abbott, Law Dict. tit. "Trust"; 27 Am. & Eng. Enc. (1st Ed.) 3; Tobias v. Ketchum, 32 N. Y. 319, 327; Luco v. De Toro, 91 Cal. 405, 417; In re Cooper's Estate, 150 Pa. St. 576; In re Spencer's Will, 57 Law T. (N. S.) 519. Mrs. Wilder's donation was one strictly in trust, and the corporation was to take it only as her trustee. Such a trust is void; and therefore this entire testamentary disposition fails. Little v. Willford, 31 Minn. 173; Bascom v. Albertson, 34 N. Y. 584; Shanahan v. Kelly, 88 Minn. 202; Fosdick v. Town, 125 N. Y. 581, 588.

If the will does not show an intent to leave this property solely in trust, then the intent cannot be ascertained, and the will is void for uncertainty. Heiss v. Murphey, 40 Wis. 276; Estate of Hoffen, 70 Wis. 522; Will of Fuller, 75 Wis. 431.

If the twenty-sixth paragraph of this will could be construed as sufficient to make an absolute gift to this corporation, it is a mere evasion, which the law will not tolerate—an attempt to create by indirection a trust which the law will not permit to be directly created. Hunt v. Davis, 135 Cal. 31, 34, and authorities there cited; Attorney-General v. Tyndall, 2 Eden, 207; Russell v. Jackson, 10 Hare, 204; Springett v. Jenings, L. R. 10 Eq. 488; O'Hara v. Dudley, 95 N. Y. 403; In re Ingersoll's Will, 59 Hun, 571; In re Spencer's Will, 57 Law T. (N. S.) 519; Gore v. Clarke, 37 S. C. 537, 550; Trustees v. Ritch, 151 N. Y. 282, 322.

The prerogative power of cy pres has no existence in this country; and therefore the court has no power to comply with the request of the testatrix that it should make such modifications in her dispositions as should allow them a legal effect. Cottman v. Grace, 112 N. Y. 299, 308, 309; In re Estate of Dixon, 143 Cal. 511; Fontain v. Ravenel, 17 How. 369; Will of Fuller, supra; Tilden v. Green, 130 N. Y. 29, 45; People v. Powers, 147 N. Y. 104, 109.

*Charles N. Bell* and *Davis, Kellogg & Severance,* for plaintiffs, respondents.

*Harvey Officer, C. E. & J. C. Otis,* and *How, Taylor & Mitchell,* for defendants, respondents.

START, C. J.

On November 10, 1894, Amherst H. Wilder died testate at the city of St. Paul, his home for many years, leaving, him surviving, his widow, Mrs. Fanny Spencer Wilder, and his only child, Miss Cornelia Day Wilder, who were his sole heirs at law. On December 17, 1894, his will was duly probated and allowed in the probate court of the county of Ramsey, and on February 3, 1896, the court made its final decree assigning the residue of his estate in accordance with the terms of the will.

Mr. Wilder, by his will, after making a number of minor bequests and legacies, not here material, and providing for his widow and child, gave, in the event of his child dying without issue, the gift to be effective after the death of his widow, a considerable part of his liberal fortune to found a perpetual charity, to be named the "Amherst H. Wilder Charity," as a benefit for his fellow citizens of the city where

he had so long resided, to be equally extended to all poor, sick, or needy persons within the city who may be found within the city, who are legitimate subjects of charity, without regard to their nationality, place of residence, sex, color, or religious prejudices.

In May, 1897, his daughter became the wife of Dr. T. E. W. Villiers Appleby, one of the defendants herein. An antenuptial agreement was entered into by the parties, which purported to be a release on the part of Dr. Appleby of all claim in or to her estate in case he survived her, except as provided in the agreement. Mrs. Appleby, always childless, died testate January 20, 1903, leaving, her surviving, her husband Dr. Appleby, and her mother, Mrs. Wilder. The will of Mrs. Appleby was duly probated, and by it, after making some other bequests and legacies, and providing for her husband in accordance with (it may be assumed) the antenuptial agreement, she gave the residue of her estate to found a charity for the relief of the worthy poor of the city of St. Paul, to be known and administered as the "Amherst H. Wilder Charity."

On April 5, 1903, Mrs. Wilder died at the city of St. Paul, testate, leaving no husband nor child her surviving. Her will was duly probated and allowed, and by it she gave the residue of her estate, after making some other bequests and legacies, none of which were made to the appellants herein, to found a charity for the relief of the worthy poor of the city of St. Paul, to be known and administered as the "Amherst H. Wilder Charity."

Some questions having arisen as to the construction of Mr. Wilder's will, the surviving trustees under his will brought this action in the district court of the county of Ramsey to secure a construction of the will and the direction of the court in the premises. Pending this action, the appellants herein, who are nephews and nieces and heirs at law, respectively, of Mrs. Wilder, filed their complaint of intervention herein. They also moved the court for leave to appear and defend the action on the ground that the will of Mrs. Wilder was void as to the residue of her estate which she attempted to give for charitable purposes, and therefore such residue descended to them and her other heirs at law. And, further, that the amount of such residue of Mrs. Wilder's estate depends upon the validity of Mr. Wilder's will; hence they have a direct interest in the result of this action. The trial court,

after hearing the parties, made its order denying the motion of the appellants for leave to appear and defend the action, and striking their complaint of intervention from the files of the court, on the ground that they had no direct interest in the subject-matter of this action. A trial of the action resulted in a judgment adjudicating the validity of Mr. Wilder's will. The intervenors appealed from the order, and also from the judgment. No other person or party appealed from the judgment.

It is perfectly obvious that, if the provisions of Mrs. Wilder's will as to founding a charity for the worthy poor of the city of St. Paul are void, the appellants have a direct interest in the result of this action, and were entitled to appear and defend it; hence, if such be the case, the order and judgment appealed from must be reversed. It is equally clear that, if they have no interest in the result of the action, the order should be affirmed, and the appeal from the judgment dismissed, for no one has appealed from the judgment who has any interest in the subject-matter of the action. Whether the appellants have any interest in the result of this action depends upon the answer which shall be given to this question: Is Mrs. Fanny Spencer Wilder's will valid? This is the sole question presented for our consideration by the record. The consideration of this question necessitates a somewhat full statement of the material provisions of Mrs. Wilder's will. The several subdivisions of the will here relevant are to the effect following:

> 3rd. I will and bequeath to my friend, Nancy Mitchell, so long as she lives the income of the sum of five thousand dollars, the same to be paid over to her semi-annually. The executors of this will so long as they shall act, and the corporation which may take under this will thereafter, are authorized to have the management and investment of the principal.
>
> 7th. For many years my friend Victor M. Watkins of St. Paul, Minnesota, has been the trusted active manager of the trusts and property named in the will of my deceased husband. He is also familiar with my property and affairs, and in consideration of such faithful service it is my will that so long as he desires to act, he be made the chief executive officer of the executors, and also of the corporate officers respectively, con-

templated by this will, and that he receive such salary annually from my estate, as will, with any salary he receives from my deceased husband's estate, and from my deceased daughter's estate, furnish him in the aggregate a salary annually of not less than five thousand dollars so long as he shall live.

8th. I will that the executors hereof set apart five thousand dollars to be kept invested; that each year there shall be expended such part of five-sixths of the income thereof as the administrator thereof may deem necessary to care for the Wilder family lot in Oakland Cemetery in St. Paul; and such part of the other one-sixth as it may deem necessary to care for the William A. Spencer family lot in the same cemetery. The officers of the corporation named herein, shall have charge of the securities and expenditures. Any part of the income of any year not expended, shall become a part of the funds of the corporation herein named.

9th. All the residue of my property and estate including any gifts which may by death or otherwise cease to be operative I direct and will shall be devoted and used to administer and furnish relief and charity for the worthy poor who may reside from time to time within the limits of St. Paul, Minnesota. It is my desire and will that this instrument be so read and construed as to permit such residue to be so devoted and used free of any and every prohibited trust feature, and free of any and every rule of law which may make my purposes and aims uncertain, and to that end my directions as to details herein may be construed, if necessary, as suggestions.

With this end in view I hereby establish and endow with such residue a fund to be hereafter known and administered in remembrance of my deceased husband as "The Amherst H. Wilder Charity." The net income only of such endowment fund and charity shall be used annually for all time to come to furnish relief and charity for such worthy poor without discriminations as to sex, color, age or religious belief of the beneficiaries. The fund and charity is to be held and possessed and owned and managed, invested and re-invested and administered, and the income thereof disbursed for the purposes herein

set forth, by the administrators, from time to time of such fund and charity in their best discretion and judgment.

10th. I will and direct the administrator of the fund and charity, as soon as it deems the same advisable, to erect in the city of St. Paul a substantial administration building. In so directing it is not my intention to direct the erection of a home for beneficiaries or a hospital for their aid and relief. I desire the building to be the headquarters in which and from which to manage and administer the business and affairs of the fund and charity, intending however that the size and style and location of the building shall conform to the dignity of this charity and the ambition and hope I have for its great good and usefulness to the worthy poor. The funds for erecting and equipping the building and renewing same and for buying a site for it may be taken from the principal of the fund and charity, but otherwise it is my wish that the principal shall always remain, if possible intact. I will and direct that the construction and furnishing of the building be plain, yet substantial without any useless expenses for decoration or show. Also that in the erection of the building there be cut or placed upon it a tablet indicating its character and purpose and by whom the charity was founded.

11th. I hereby fully authorize and empower the administrator of this fund and charity to take possession of and sell, convey, assign, improve, lease or partition on such terms and conditions as it may deem advisable all and any part of the property at any time belonging to this fund and endowment and to invest and re-invest the proceeds and income thereof hereby investing such administrator which shall include the corporation to be organized as herein provided, with the most ample powers of every name and kind necessary in its opinion and discretion or in law, to carry out and execute my aims and purposes in the endowment and establishment of this fund and charity, and the aims and powers of such proposed corporation.

16th. I authorize and fully empower the administrator of the fund and charity named in this will should it deem it advisable so to do to permit the fund and charity established and en-

dowed by my daughter by her last will to be administered from such administration building or to permit her charity to be consolidated with my own.

17th. It is my wish that the administrator of this fund provide and equip in the administration building a day nursery not to be used at night except in case of sickness. The administrator is authorized to use for this purpose annually of the net income of the fund so much of twenty five hundred dollars as may be necessary, but such annual sum shall not be cumulative.

18th. I will and direct that the administrator, should it deem it advisable, may establish within the limits of the city of St. Paul free baths for the use and benefit of the worthy poor resident of St. Paul, and the administrator, should it deem it advisable, may use of the principal of the fund a sum not exceeding twenty thousand dollars in establishing such baths and may devote of the net income each year, a sum not exceeding five thousand dollars in supporting and maintaining the baths.

19th. I will and direct that the administrator of the fund and charity expend each year of the net income thereof, such part of fifty dollars as it deems necessary to furnish and equip the endowed room in St. Luke's Hospital of St. Paul known as the "Amherst Wilder Merriam" room and a like sum each year to furnish and equip the room in such hospital known as the "Amherst Holcomb Wilder" room and the sum of twenty five dollars to furnish and care for the bed in the hospital known as the "Dr. Edward Curran Spencer Bed."

20th. As death of individuals, or inability to act, or the laws of Minnesota may make the management of this fund and charity by individuals difficult or doubtful, I deem it advisable that it be administered by and through a corporation. I therefore will and direct that the executors of this will shall, during the life of the two youngest executors nominated in this will, and before the final decree is taken in the administration of my estate, organize, or cause to be organized under the laws of Minnesota, a corporation with corporate powers and purposes ample to receive, own and administer this fund and en-

dowment and all the property covered thereby. Such corporation shall have, and to it I hereby give, devise and bequeath all the property and estate covered by, and included in Section 9th of this will, to have and to hold to it and to its successor having like corporate powers and purposes, and assigns forever.

21st. In the event any bequest or devise made cannot under any rule of law be administered by the corporation administering this fund and charity then I name and make the persons who may be from time to time the managers of such corporation special agents with full power to administer such bequests or devises.

22nd. I hereby name and appoint as executors of my will, my friends Victor M. Watkins, Charles L. Spencer and Charles N. Bell, all of St. Paul. I also hereby name and appoint as the corporate managers of the proposed corporation, and in the same order of substitution in case of resignation or vacancy, the same persons I have named herein as executors.

25th. Before any corporation herein named, or referred to, shall receive, take charge of, and administer any of the fund and estate herein named, or any part of same, the then acting executors of my will shall become and be the managing officers of the corporation.

26th. It is my intention during my lifetime to organize or to cause to be organized, a corporation with corporate powers and purposes necessary and germane to receive, own and administer this fund and endowment. In case I fail so to do, the corporation which I have directed to be organized to administer said fund and endowment, I direct and will, be organized before the final decree in the administration of my estate is taken or made, and said corporation shall administer said fund and endowment so long as the persons, and the survivor of them, I have selected and named in this will as original and substituted executors shall live, and so long thereafter as the laws of Minnesota applicable thereto shall permit and if at any time the administration of said fund and endowment, on the suggested lines I have hereinbefore named, is prohibited by any law thereto applicable and controlling, then it is my will said corporation

shall be, and it hereby is endowed with said fund and endowment and the property thereof and all of same, real and personal (and this will shall be construed to that end) and all said property, estate and fund shall be possessed, owned, used and applied and devoted, free of any prohibited trust feature by said corporation, to the aims and purposes I have in making this will, to-wit: to furnish through suitable and legal corporate action and authority, relief and charity for the worthy poor who may reside from time to time within the limits of St. Paul, Minnesota, and I authorize and will that said corporation be organized with corporate powers and purposes ample, sufficient and germane so to do and it is my will that should there be any default or unreasonable delay in organizing such corporation, that then any court having jurisdiction in such matters cause my wishes and will in that regard to be enforced and executed.

27th. I authorize and empower the administrator of the endowment and charity I have created to receive any gift made for such purpose, and to absorb and administer same with, and as a part of this endowment and charity. Provided, however, such gift must and shall be made wholly and entirely to be absorbed in and by, and to become a part of this endowment and charity by me created and without any other conditions or limitations of any kind or character whatever. Nothing herein contained, however, shall be construed as making it obligatory upon the corporate managers to receive or administer any such tendered gift, but they shall act as their discretion and judgment may dictate relative to receiving same, and it must be only for and upon the complete absorption I have named.

28th. It may be found necessary or convenient while my estate is in the probate court to make conveyances or leases of real or personal property, therefore I hereby authorize the executors of this will while in office so to do.

In the first codicil to her will Mrs. Wilder declared that:

Nothing in this codicil shall be construed as in any manner limiting the free alienation at any time of any part of said fund

and endowment by said corporation or its successor as in section 11th and other sections of my will authorized, or permitted and all essential powers for the free alienation of said fund and endowment, and at all times, and the ownership thereof, free of any and every prohibited trust feature, is given said corporation and its successor.

And in a second codicil she provided:

Until said corporation is created (subject to the power given in section 28th) the legal title of said fund and endowment and of all of same, shall vest in said Victor M. Watkins and Charles L. Spencer and the survivor of them, charged with my wishes, directions and will, and I desire my will to be taken as a continuing petition to the law making powers of Minnesota, to make and keep such laws as shall permit and aid, at all times during the years to come, the easy and full operation and enforcement, in letter and in spirit, of my wishes and will.

1. The claim of the appellants, stating it broadly, is that the will of Mrs. Wilder as to the residue of her estate is void, because the attempted gift, whether it was to the executors or to a corporation to be organized is not absolute, but in trust only, and that the trusts are prohibited by our statute G. S. 1894, c. 43, relating to uses and trusts.

If the will must be construed as giving such residue either to the executors or to a corporation in trust for the worthy poor of the city of St. Paul, it is void to that extent, unless chapter 132, p. 188, Laws 1903, be constitutional. This conclusion necessarily follows from a consideration of the former decisions of this court construing our statute of uses and trusts, and holding that it abolished all express trusts, including charitable trusts, except as authorized thereby; and, further, that the beneficiary of any authorized trust must be certain, or capable of being rendered certain. German Land Assn. v. Scholler, 10 Minn. 260 (331); Little v. Willford, 31 Minn. 173, 17 N. W. 282; Atwater v. Russell, 49 Minn. 57, 51 N. W. 629, 52 N. W. 26; Lane v. Eaton, 69 Minn. 141, 71 N. W. 1031; Shanahan v. Kelly, 88 Minn. 202, 92 N. W. 948. Now, it is perfectly obvious that, if the

gift in question was made to individuals or to a corporation simply in trust for the worthy poor of the city of St. Paul, the beneficiaries are so uncertain, changeable, and indeterminate that the trust is void, unless it is saved by chapter 132, p. 188, Laws 1903.

2. Is such statute constitutional? It is the contention of the appellants that it is not, for the reason that it violates the mandate of the constitution that "no law shall embrace more than one subject, which shall be expressed in its title." Const. art. 4, § 27. The title of the act is this:

> An act to amend the sixth subdivision of section 4284 of the General Statutes of Minnesota for 1894 as amended by chapter 95 of the Laws of 1901 relating to express trusts.

The title is a restrictive one, for it gives no intimation that the act deals with the general subject of trusts, as might have been the case if it had simply read, "An act relating to express trusts." In construing this title the last clause thereof cannot be disconnected from that which precedes and limits it. The title cannot be construed as if it read, "An act relating to express trusts," for the declared purpose of the act is to amend the sixth subdivision of a certain section relating to express trusts. Or, in other words, the title simply gives notice that the proposed amendment relates only to the subject-matter of such subdivision.

In determining whether the subject-matter of the act here in question is embraced in its title, the distinction between a general title to a statute and a restricted one and the rules applicable to each must be observed. The rule is that the title to a statute, if it be expressed in general terms, is sufficient if it is not a cloak for legislating upon dissimilar matters, and the subjects embraced in the enacting clause are naturally connected with the subject expressed in the title. General titles to statutes should be liberally construed in a common-sense way. State v. Cassidy, 22 Minn. 312; Winters v. City of Duluth, 82 Minn. 127, 84 N. W. 788. But if the title to a statute be a restrictive one, carving out for consideration a part only of a general subject, legislation under such title must be confined within the same limits. All provisions of an act outside of such limits are unconstitutional, even though such provisions might have been included in the act under a

broader title. Cooley, Const. Lim. (7th Ed.) 212; 26 Am. & Eng. Enc. (2d Ed.) 590; State v. Porter, 53 Minn. 279, 55 N. W. 134; Palmer v. Bank of Zumbrota, 72 Minn. 266, 75 N. W. 380; Hamilton v. Minneapolis Desk Mnfg. Co., 78 Minn. 3, 80 N. W. 693.

Now, if the provisions of the act in question be compared with the law as to uses and trusts, as it existed at the time the act was passed, the conclusion cannot be resisted that its subject-matter is not expressed in its title. The law then was, and had been from the beginning of the state, that express trusts, except as authorized and modified by the statute, were prohibited. G. S. 1894, c. 43. The purpose of the statute was to abolish the system of uses and trusts, which had become the source of great abuses. But the creation of a limited number of express trusts which were deemed to be beneficial and consistent with the public policy of the state was authorized. The trusts which were authorized and which were an exception to the general prohibition were classified, and each class was embraced in a separate subdivision of the section of the statute authorizing the creation of the excepted trusts. The sixth subdivision of the section provided that municipalities of the state might take by gift, grant, bequest, or devise property of any kind, and hold it in trust for the benefit of any public library or cemetery association, or for maintaining a kindergarten or other school. G. S. 1894, § 4284, subd. 6. The class of authorized trusts provided for by this sixth subdivision is that of municipal trusts.

It is to this particular class of trusts that the title of the act in question directs attention, and not to the general subject of express trusts. Or, in other words, the title gives notice that the purpose of the act is not to legislate generally on the subject of trusts, but to amend the law relating to municipal trusts as limited and defined in the sixth subdivision named in the title. No legislator, lawyer, or layman, by reading the title, would understand, or even suspect, that the purpose of the act was to effect a practical repeal of the existing statute prohibiting express trusts by authorizing the creation of trusts for nearly every conceivable purpose; to change the settled public policy of the state on the subject of trusts, as indicated by its statutes and the decisions of its courts for fifty years; to open wide the door for the abuses which the original statute was intended to remedy; to permit

an evasion of our laws against perpetuities and accumulations by the creation of trusts; to abrogate the rule requiring the beneficiaries to be certain, or capable of being rendered certain; and to establish the ancient and discarded rule of charitable uses, and to invest the courts with the prerogative power of cy pres in its most obnoxious form. Such is the legal effect of the statute in question.

Such radical changes in our laws and public policy were concealed under a title declaring that the purpose of the act was to amend a particular subdivision of a section of the statute authorizing the creation of a particular class of trusts. The title relates to a particular class of trusts, while the act itself relates to general legislation on the subject of trusts—a clear departure from the title. We hold that the title of chapter 132, p. 188, Laws 1903, is restrictive, and that the subject-matter of the act is not expressed in its title, and therefore the whole act is unconstitutional.

3. This brings us to the question whether the gift of Mrs. Wilder, by her will, of the residue of her estate for purposes of charity, is valid under the laws of the state as they existed prior to the attempted amendment of 1903. As already suggested, the gift is void if the fair import of the will is that such residue is given in trust to either the executors or to a corporation to be organized, for the reason that many of the alleged trusts attempted to be created are not authorized by law. But if the gift is not in trust, but an absolute one to a corporation to be organized, the organization of which is authorized by law, whose corporate purposes and powers are to be the acceptance and administration of the gift for the purposes for which it was made, the gift is valid as an executory devise to such corporation.

The term "absolute gift," as used in this opinion and in former decisions of this court, does not mean, as appellants seem to claim, that the gift must be without any conditions or limitations as to the time and manner of the use of the subject-matter of the gift. The term was and is used in contradistinction to "a gift in trust." Or, in other words, an absolute gift is one where not only the legal title, but the beneficial ownership as well, is vested in the donee. A gift in trust is one where the subject of the gift is transferred to the donee, not for the purpose of vesting both the legal title and beneficial ownership of the subject in the donee, but that it may be held and applied to cer-

tain uses for a third party—the beneficiary. Or, as said in the case of Hospes v. Northwestern Mnfg. & Car Co., 48 Minn. 174, 192, 50 N. W. 1119: "A trust implies two estates or interests, one equitable and one legal; one person as trustee holding the legal title, while another as the cestui qui trust has the beneficial interest."

It follows that a gift which vests both the legal title and the beneficial ownership of the subject of the gift in the donee is not one in trust, even if it be a conditional one. Such a gift is an absolute one within the meaning of the term as here used. The mere reading of the will shows that the residue of the estate was not given or attempted to be given to the individuals named therein as executors, or to any other persons.

By the ninth subdivision of her will Mrs. Wilder devotes the residue of her estate, including any of her gifts, legacies, and bequests which may by death or otherwise cease to be operative, for the relief of the worthy poor of the city of St. Paul. With this end in view she establishes and endows with such residue a fund to be known as "The Amherst H. Wilder Charity," the annual income of the fund to be used for such charity by its administrators designated in the will. By the tenth, eleventh, sixteenth, seventeenth, eighteenth, and nineteenth subdivisions of her will she gives directions, imposes conditions, and makes suggestions as to the management of the charity. She however, expressly declares in the ninth subdivision that her will shall be so construed as to permit her gift to be devoted and used for such charity free of every prohibited trust feature, and to that end her directions as to details may, if necessary, be construed as suggestions. In the twentieth subdivision she declares that she deems it advisable that the fund and charity be administered by a corporation which she directs to be organized with powers and purposes ample to receive, own, and administer the fund and endowment and the property covered thereby. She then expressly gives the residue of her estate to such corporation to have and to hold it, and to its successors and assigns forever. This gift of the residue of her estate to such corporation is explicitly repeated and affirmed in the twenty-sixth subdivision of her will. In the paragraph from the second codicil to her will which we have quoted, it is provided that until such corporation

is created the legal title of the fund and endowment shall vest in the persons therein named.

It is clear from these provisions of the will that the persons named therein are not given the beneficial ownership of the residue of the estate, but that they are simply to hold the legal title thereto, and possess and manage the fund until the corporation can be organized, when it vests in the corporation in accordance with the terms of the will making the gift to it.

If such gift to the corporation be absolute, then the Shanahan case, 88 Minn. 202, 92 N. W. 948, is not here in point, for the gift in that case was to individuals in trust for an uncertain class of beneficiaries. In the opinion in that case the distinction is pointed out between such a gift to individuals and one to a corporation authorized, as a part of its corporate work or business, to acquire and hold property for the purposes for which the gift was made. A gift by deed, devise, or bequest to an existing corporation, or to one to be thereafter organized within the time limited by law, with directions or conditions as to the use or management of the subject-matter of the gift which are reasonably consistent with the corporate purposes of the donee, is not a gift in trust, but an absolute one to the corporation, within the meaning of our statute of uses and trusts. Little v. Willford, 31 Minn. 173, 17 N. W. 282; Atwater v. Russell, 49 Minn. 22, 51 N. W. 624; Lane v. Eaton, 69 Minn. 141, 71 N. W. 1031; Kahle v. Evangelical Lutheran Joint Synod, 81 Minn. 7, 83 N. W. 460; Cone v. Wold, 85 Minn. 302, 88 N. W. 977; City of Owatonna v. Rosebrock, 88 Minn. 319, 92 N. W. 1122. The cases cited fully sustain this proposition. In Cone v. Wold it was directly held that: "It is legal for a donor to prescribe, by way of limitation, that his gift shall be kept and preserved so as to subserve a purpose which a donee corporation was created to promote. To so prescribe is nothing more than to declare that the trust fund shall be devoted to the objects which the legislature had in view when providing for the existence of the corporation."

The organization of a corporation with power to accept and administer gifts for the relief and charity of the worthy poor is authorized by chapter 158, p. 343, Laws 1895, entitled: "An act to provide for the organization and government of societies organized to administer and furnish relief and charity for the worthy poor who may reside in

a designated locality." This statute expressly provides for the organization of such a corporation, and authorizes it to receive, by gift, grant, devise, or bequest, any property, and to hold, use or convey it for the purposes named in its articles of incorporation in such manner as may be directed by any donor making a gift to such corporation to be administered and used to furnish relief and charity for the worthy poor; and, further, that the corporation shall have no power to divert any gift from the specific uses and purposes designated by the donor. While this statute does not authorize such corporation to take property by gift to hold in trust for purposes not otherwise authorized by law, yet it does authorize the corporation to take, as owner by gift, any property subject to such conditions or limitations, not inconsistent with its corporate purposes, as the donor may impose. Any gift which this statute authorizes the corporation to receive the donor may lawfully make to it. This is necessarily implied from the express terms of the statute.

It follows, then, that the validity of Mrs. Wilder's will depends upon the answer to the question: Was her gift made to the corporation as owner or in trust?

This question is to be answered by reading and considering together the provisions of the will as to the residue of her estate as related parts of a scheme for founding a noble charity for the relief of the poor of her city. So reading and considering it, we have no difficulty in discovering her intention. It is clear that her primary purpose was to effectually devote a large part of her fortune for the practical relief of the worthy poor, and to make it certain that such purpose should not be defeated by any unforeseen contingencies, such as the possibility of some of her directions as to details of the scheme being held invalid. The basis of the scheme was the formation of a corporation to own the fund and administer the charity. She accordingly directs the formation of such a corporation, and by the twentieth and twenty-sixth subdivisions of her will she gives the residue of her estate to it, and to its successors and assigns, forever; and further provides that such property (and the will must be construed to that end) shall be possessed, owned, used, and applied by the corporation, free from any prohibited trust feature, to furnish, through legal corporate action, relief for the worthy poor. Again in the first codicil to her will the

ownership of the property is given to the corporation and its successors free of any and every prohibited trust. These provisions clearly indicate that she intended that any directions in her will as to the details of the administration of the fund which might be found to be invalid or inconsistent with her purpose to vest in the corporation, as owner, the residue of her estate to be used for its corporate work of furnishing relief to the worthy poor, should be treated as suggestions and subordinate to such purpose.

It is, however, the contention of the appellants that other provisions of the will conclusively show that the gift was intended by the testatrix to be wholly in trust, and not as an absolute gift to the corporation for its corporate purposes; and, further, that no corporation organized pursuant to chapter 158, p. 343, Laws 1895, can lawfully administer the trusts created by the will.

The alleged trust features of the will enumerated by counsel for the appellants may be logically classified as follows: (a) Those relating to the life annuity to be paid to Miss Nancy Mitchell. (b) Those relating to the founding and endowing of "The Amherst H. Wilder Charity," including the erection, equipment, management, and use of an administration building. (c) Those requiring $5,000 to be set apart and invested, the income therefrom to be used to maintain and care for two family lots in Oakland Cemetery. (d) Those relating to the maintenance of two rooms and a bed in St. Luke's Hospital.

It is proper for us to consider these several classes of alleged trusts only so far as it may be necessary to determine whether any of them render the gift of the residue of the estate void. This is necessarily so, for we have no original jurisdiction to construe wills and give directions as to their execution. Our appellate jurisdiction is here invoked only to the extent of determining whether the gift of the residue of the estate to the corporation is valid.

The provisions relating to the first class do not create any unauthorized trust, for the statute (G. S. 1894, § 4284) expressly authorizes the creation of an express trust to receive and hold property and apply the income thereof to the use of any person during his life. If it should be conceded that the corporation could not act as such trustee, still the twenty-first subdivision of the will provides for such a contingency by expressly providing that in the event any bequest cannot,

under any rule of law, be administered by the corporation, the persons who may be officers of the corporation shall have full power to administer the bequest as special agents. We are, however, of the opinion, and so hold, that the provisions of the will as to this first class do not create any trust within the generally accepted meaning of the term. There is no direction to segregate $5,000 from the residue of the estate, for only the income of such sum is given to Miss Mitchell for her life, the corporation to have the management and investment of the principal sum. But by the ninth subdivision of the will it is provided that the residue of the estate given to the corporation includes any gifts or bequests which may, by death or otherwise, cease to be operative. The bequest of the income of the principal sum is then a charge on the residue of the estate which is given to the corporation, and it takes the gift subject to the charge or condition that it will pay to Miss Mitchell the income of $5,000 during her life. This is a conditional gift which the donor had the legal right to make and the corporation to accept and perform the condition. The gift is therefore valid.

The provisions of the will relevant to the second class of alleged trusts indicate that the testatrix appreciated the fact that whether her gift would result in a blessing or a misfortune depended upon its administration; that is, whether it was so managed as to encourage or to impair the self-respect and self-reliance of the beneficiaries. She accordingly gave directions and imposed conditions as to the management of the fund. The directions and conditions relating to the erection, equipment, and use of an administration building are consistent with the purposes and work of the corporation. The provisions of the will as to them are clearly valid, for they fairly fall within the rule that a gift may be made to the corporation with directions or conditions as to the use of the subject-matter of the gift. If the will imposes any limitations as to the use of the fund which are inconsistent with the powers or purposes of the corporation, they must be treated as suggestions, in accordance with the express declaration of the testatrix.

It may be conceded, for the purposes of this case, that the provisions of the will as to the third class—those relating to the care of the cemetery lots—are void, but it by no means follows from this concession

that the will is invalid as to any part of the residue of the estate, for effect must be given to the repeated and clear direction of the testatrix to the effect that such residue shall vest in the corporation free from any trust features of the will which may be invalid. The legal effect of such direction is to make the gift in the alternative as to any such trust features; that is, if they are valid, the gift is subject to the trusts; but if they are not, then the gift vests absolutely in the corporation free from such invalid trusts. Such alternative gifts are valid. 1 Jarman, Wills, *228; Inglis v. Trustees of Sailors' Snug Harbour, 3 Pet. 99; Cruikshank v. Home for the Friendless, 113 N. Y. 337, 21 N. E. 64. This construction does not render the will void for uncertainty, because, within the purview of the law, there can be no uncertainty as to what provisions of the will are invalid. If such there be, the law will identify them, and give effect to the expressed intention of the testatrix to vest the residue of her estate in the corporation, precisely as it would if they had not been made.

It does not appear from the record in this case that the provisions of the will as to the fourth class of alleged trusts—those relating to the furnishing and care of the rooms and bed in St. Luke's Hospital —are not entirely consistent with the corporate purposes and work of the corporation. If they are, then they are valid, for the necessary expense of complying with such provisions, not to exceed $50 a year, is a charge on the income of the fund. The corporation takes the fund subject to the charge and condition, as in the case of the annuity to Miss Mitchell. In no event, however, can such provisions render the will invalid, for, if the condition and duty imposed upon the corporation thereby are so far foreign to the purposes of its organization that they are invalid, then the gift vests in the corporation free from such trust features.

4. The last contention of counsel for appellants is that, if the will can be construed as making an absolute gift of the residue of the estate to the corporation, it is a mere evasion—an attempt to create by indirection a trust which the law will not permit to be directly created. In this connection much stress is laid upon the fact that the executors were directed to organize the corporation, and that they and two other persons named in the will were to be the corporate managers, with power to fill all vacancies; that they were the tried and trusted

friends of the testatrix and of her deceased husband, one of whom had been for many years the trusted manager of the trusts and property named in the will of her deceased husband, and had been intimately connected with the proposed charity.

Such fact, however, has no tendency to sustain the claim that this will is an attempted evasion of the laws of our state. It is quite usual for a testator, when providing for the founding and endowment of a munificent charity, to direct his executors to organize a corporation to administer the charity, and to provide for filling vacancies in the board of directors or managers thereof, substantially as directed in this will. The selection by Mrs. Wilder of her friends, those who were in sympathy with her laudable purpose and familiar with the property to be devoted to the charity, was a natural and proper one. The law expressly authorizes and invites the organization of corporations to take, by gift or otherwise, any property, as the legal and beneficial owner thereof for the purposes of its corporate work of relieving the poor, on such conditions and limitations as the donor may impose. But the law for good reasons forbids the creation of trusts whereby the legal title only of property may be vested in a person or corporation as trustee for the use and benefit of the worthy poor, or any other indefinite class as the beneficial owners thereof. Now, because the legislature has thus ordained that such charitable gifts shall be vested in corporations, organized for such purposes, as absolute owners, how can it in reason be claimed that the testatrix in this case intended an evasion of the laws when she did that which the law required her to do if she would make her gift effective?

We have attentively considered this claim of the appellants that this will is an evasion of the law, and the authorities cited in support of it. We have reached the conclusion that the claim is without merit, and we hold the will of Mrs. Wilder to be valid.

Order affirmed, and appeal from the judgment dismissed.