## MINNESOTA VALLEY GUN CLUB v. NORTHLINE CORPORATION.[1]

February 9, 1940.

No. 32,193.

*H. W. Volk*, for appellant.
*Paul C. Thomas*, for respondent.

HILTON, JUSTICE.

This is a proceeding under the declaratory judgments act to discover the validity of, and the rights and duties under, a certain written agreement executed September 14, 1926. Plaintiff appeals from an order denying its motion for a new trial.

Pursuant to good practice, the facts were stipulated. John G. Yardeen owned a farm, part of which consisted of two lakes fre-

[1]Reported in 290 N. W. 222.

quented by ducks and replete with other wild life. In 1921 an instrument was executed between Yardeen and wife and W. O. Flory whereby the latter and members of the Minnesota Valley Gun Club who were properly certified were entitled to enter the land and hunt. Pursuant to an option, at the end of five years there could be a renewal for a like period. In 1926, by oral agreement, there was a renewal until 1931. On September 14, 1926, another instrument, drafted by Flory, a layman, was executed. It is the source of the present controversy.

For convenience, the provisions will be stated factually with the relevant words and phrases of the parties in quotations. The instrument is designated an "indenture," and Yardeen is described as the "landlord." By it, "the said landlord hereby licenses and authorizes the said Flory the exclusive right for a period of ten years from September 1, 1931, to enter upon the lands * * * and hunt, fish and shoot game." The "landlord" covenanted to keep others off the premises so that "the parties * * * licensed may have the exclusive enjoyment of the license aforesaid." The "privilege of erecting a club house and other buildings" and a right to pass over the land to reach the structure was provided. It was agreed that Flory "may stock and have the exclusive right to fish in the waters flowing from the springs," and, "if necessary, have the privilege of digging out and damming up of the land and waters" for conservation and propagation of fish. A dam to control the waters could be built and maintained without "hindrance." The "license" could be terminated by Flory and his assigns by a notice 60 days before September 10, of any year. There was an option given to renew "license for another period of ten years." The "license" was to apply to the farm of the "landlord." Finally, the "indenture" was made binding on all the heirs of either party. It was executed before witnesses, acknowledged, and recorded. In 1927, by writing on the back of the instrument, the building and fishing "privileges" were cancelled and the rental of $150 per year was increased to $200. Again there was an acknowledgment.

On March 18, 1935, Flory and wife "assigned" plaintiff their interest under the agreement, assuming now that such was possible. In 1936 Yardeen died. The next year, his personal representative conveyed the premises to defendant. Upon the defendant's refusal to recognize the instrument of 1926 as legally binding, the present proceeding was commenced.

Defendant urges that a revocable license was created, while plaintiff argues that a *profit a prendre* was granted. Question is also raised as to the applicability of Minn. Const. art. 1, § 15.

Apparent is the fact that the instrument is sprinkled with words which in law are of an inconsistent nature. Despite this the substantive character must govern.

While there are divers kinds of licenses, it is sufficient now to state that a license is not an estate but a permission giving the licensee a personal legal privilege enjoyable on the land of another. 2 Tiffany, Real Property (2 ed.) § 349, p. 1201. It is destroyed by an attempted transfer if the licensor so elects. Cameron v. Chicago, M. & St. P. Ry. Co. 60 Minn. 100, 61 N. W. 814. It is revocable at the licensor's will, see 4 Dunnell, Minn. Dig. (2 ed. & Supps.) § 5576, and cases, or by his death, see Little v. Willford, 31 Minn. 173, 17 N. W. 282. Normally, payment of consideration does not render it irrevocable. City of Hutchinson v. Wegner, 157 Minn. 41, 195 N. W. 535.

A *profit a prendre* is more substantial. It gives a right enforceable against others. 2 Tiffany, Real Property (2 ed.) § 381, p. 1391. If in gross (*i. e.*, a profit which is held by one independently of his ownership of other land), it is generally transferable and inheritable. *Id.* p. 1393. Since a *profit a prendre* is an interest in realty, it must be created, in contrast to a license, by a properly executed writing. 2 Mason Minn. St. 1927, § 8459. One ancient form of *profit a prendre* is the granting of hunting rights. Council v. Sanderlin, 183 N. C. 253, 111 S. E. 365, 32 A. L. R. 1527; St. Helen Shooting Club v. Mogle, 234 Mich. 60, 207 N. W. 915; 12 R. C. L. p. 689; note, 40 L.R.A.(N.S.) 300. While it is true that wild life is not part of the soil as many common forms

of *profits a prendre* are, yet the right to hunt and take game appertains to the land and is a profit flowing from the ownership. It is an incorporeal right allied so closely to the fee, probably for historical reasons, that it justifiably can be regarded as a *profit a prendre.* This is true although wild life is a subject of ownership only when reduced to possession, Liesner v. Wanie, 156 Wis. 16, 145 N. W. 374, 50 L.R.A.(N.S.) 703; see Missouri v. Holland, 252 U. S. 416, 434, 40 S. Ct. 382, 384, 64 L. ed. 641, 11 A. L. R. 984 (Holmes, J., "possession is the beginning of ownership"). While title is in the state as trustee, 1 Mason Minn. St. 1927, § 5496, the owner of the land has a qualified property interest in that it is he who has the exclusive right to reduce game to possession. L. Realty Co. v. Johnson, 92 Minn. 363, 100 N. W. 94, 66 L. R. A. 439, 104 A. S. R. 677; Lamprey v. Danz, 86 Minn. 317, 90 N. W. 578.

From the foregoing it should be obvious that the instant case revolves on the distinctions between a *profit a prendre* and a license. If all that was given was the latter, plaintiff's argument trips at the outset. The instrument contains the answer.

A lump sum annual rental was agreed upon. This is a fact favoring the view that a more substantial interest was intended than a license. City of Hutchinson v. Wegner, 157 Minn. 41, 46, 195 N. W. 535; 2 Tiffany, Real Property (2 ed.) § 349, p. 1208. Relevant, too, is the fact that the "indenture" was made binding on the heirs of both parties. Generally such a limitation is associated with grant rather than license, which is a mere personal privilege destroyed by death. This indicates that the parties contemplated a relationship with a permanency which a license probably could not bestow. Also the parties executed the "indenture" with the same formality as is accorded an instrument transferring an interest in realty. This is another item, while far from conclusive, which indicates the intent. Yardeen agreed to permit certain rather extensive operations to be carried out on the land. Looking at these at the time the instrument was executed (disregarding for the moment the 1927 agreement), their nature sug-

gests that they normally should be associated with a relationship less tenuous than a license. Interesting is the fact that Yardeen covenanted to insure exclusive enjoyment. Expression of this may or may not have been necessary. While this could have been made the incident of a license, it appears to be a factor tending to indicate that a *profit a prendre* was intended, which generally has, as an attribute, exclusive enjoyment.

Reliance is placed upon the fact that the 1927 agreement was the product of Yardeen's power and right to revoke. The agreement does not show what, if any, consideration moved between the parties. Parties by mutual consent can always modify their contract. There is nothing beyond surmise to indicate that Yardeen's right to revoke, if such existed, was the basis of the agreement. Again this is merely an item to consider.

Although customary words of grant are absent, it must be remembered the draftsman was a layman. The confusing use of "landlord," "license," "indenture," "right," and "privilege" leaves little to rely upon as a basis for decision. In addition, it is a persuasive reason why too much reliance cannot be placed upon the language employed. Reading the instrument as a unit, it satisfactorily conveys the conception that a more substantial relationship was intended than defendant concedes. The particular items mentioned, on the whole, lead to the conclusion that a *profit a prendre* was granted.

As to the claimed violation of Minn. Const. art. 1, § 15, rendering void leases and grants of agricultural lands for longer than 21 years on which a rent is reserved, assuming plaintiff's various interests would exceed 21 years within the meaning of the prohibition, we do not think that a *profit a prendre* of the nature herein involved falls within the forbidden category. The agricultural use is only infringed incidentally by the seasonal enjoyment of the profit.

With respect to the question of the ability of the members of plaintiff corporation to exercise the right given by the assignment, we think, under the facts, that many provisions establish

that the contracting parties intended that the beneficial enjoyment should be exercised by the group actually composing the club. Flory's close association with it was known to Yardeen. Imperfect draftsmanship stifled accurate expression, but there are sufficient factors to establish the intent of the parties. Under the assignment the members can enjoy the profit.

The order appealed from is hereby reversed and the trial court is directed to make and file amended findings of fact and conclusions of law consistent with the views herein expressed.