**IRON CITY INDUSTRIAL CLEANING CORPORATION, a Pennsylvania corporation, Plaintiff,**

v.

**LOCAL 141, LAUNDRY AND DRY CLEANERS INTERNATIONAL UNION, AFL–CIO, and Sam H. Begler, President, Defendants.**

**Civ. A. No. 70–1040.**

United States District Court,
W. D. Pennsylvania.
Sept. 22, 1970.

Donald B. Heard, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for plaintiff.

Herman L. Foreman, Rothman, Gordon, Foreman & Groudine, Pittsburgh, Pa., for defendants.

## OPINION

GOURLEY, Senior District Judge:

In this civil action, plaintiff seeks an order vacating an award entered in an arbitration conducted pursuant to a collective bargaining agreement and directing the parties to resubmit to arbitration the issues previously considered by the Arbitrator. Jurisdiction is founded upon Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C.A. § 185, and through it are invoked the remedies of Section 10 of the United States Arbitration Act, 9 U.S.C.A. § 10. In its Complaint, plaintiff requests a preliminary injunction.

An Answer has been filed, an evidentiary hearing has been conducted upon the request for a preliminary injunction, and proposed findings of fact and conclusions of law have been submitted by counsel for the respective parties. Upon due consideration of the pleadings, the evidence presented at the hearing, and the arguments and proposed findings of counsel, the Court is of the opinion that the request for preliminary injunction should be denied.

Plaintiff is a corporation incorporated in Pennsylvania and maintains its principal office in Pittsburgh, Pennsylvania. Plaintiff is engaged in the operation of an industrial laundry and is engaged in an industry affecting commerce within the meaning of the Labor-Management Relations Act of 1947, as amended. Defendant Union represents plaintiff's employees for purposes of collective bargaining. At all relevant times, including the present, there has been in effect a collective bargaining agreement (hereinafter designated "the Agreement") executed by the parties on November 1, 1967.

In August of 1967, plaintiff installed in its plant a machine known as a Mister Executive Shirt Pressing Machine and two machines known as Dry Clean Legger pants pressing machines. Plaintiff desired to establish piece work rates for these machines and proposed certain rates to the defendant Union. Defendant Union was unable to agree with plaintiff's proposed piece work rates, and, pursuant to Section 3.2 of the Agreement [1], the parties submitted the determination of these rates to a single arbitrator [2].

Hearings were conducted by the Arbitrator on July 8 and 9, 1968. At the

---

1. "3.2 It is agreed that any work not specifically covered in the wage schedule referred to hereinabove, or in the piece work schedules agreed upon separately between the parties, shall be paid for at such hourly or piece work rates as shall be mutually determined by the Company and the Union, and if such matter cannot be amicably determined by the par-

ties, the same shall be referred to arbitration as hereinafter provided."

2. Although Section 13.6 of the Agreement contemplates a panel of three arbitrators, the parties waived this requirement and agreed to submit the dispute to a single arbitrator.

hearings, testimony was received as to the results obtained from time studies conducted by time study engineers acting on behalf of plaintiff and defendant. The Arbitrator also visited plaintiff's plant and observed employees operating the machines in question. On November 11, 1968, the Arbitrator issued an award establishing a piece rate of $.021 per shirt, based on an average production of 125 shirts per hour, on the Mr. Executive Shirt Pressing Machine, and a piece rate of $.021 per pair of pants, based on an average production of 90 pair of pants per hour, on the Dry Clean Legger machines.

Since approximately April of 1969, the hourly production rate on the Mr. Executive Shirt Pressing Machine has shown a progressive increase, until it reached a present high of 200 shirts per hour for employees Walker and Whitehead. The present hourly production rate represents a sixty percent increase over the rate upon which the Arbitrator based his November 11, 1968 decision.

Since approximately February of 1969, the hourly production rate of employees Kea and Arrington on the Dry Clean Legger machines has shown a progressive increase, until it reached a high of 157 pairs of pants per hour in March of 1970. The present hourly production rate on these machines represents a seventy-five percent increase over the rate upon which the Arbitrator based his November 11, 1968 decision.

It appears undisputed that, since the Arbitrator's award on November 11, 1968, there have been no changes in the Dry Clean Legger machines, the method of operating said machines or the job duties of the employees operating said machines. It also appears undisputed that there has been no change in the Mr. Executive Shirt Pressing Machine or in the method of its operation. Some dispute exists as to whether there has been a change in the job duties of the employees operating said machine.

Plaintiff's basic contention is that plaintiff's employees, while operating the aforementioned machines during the period prior to the Arbitrator's decision of November 11, 1968, "pegged" or deliberately reduced their hourly production in order that the time-study engineers and the Arbitrator would arrive at an artificially low rate of hourly production upon which to base the piece work rates for these machines. Asserting essentially that the Arbitrator's decision was wrongfully influenced by fraudulent actions on the part of plaintiff's employees, plaintiff seeks vacation of the Arbitrator's award under Section 10(a) of the United States Arbitration Act, 9 U.S.C.A. § 10(a).[3]

There is substantial authority to the effect that a federal district court may apply the summary remedies of the United States Arbitration Act in an action under Section 301 of the Labor Management Relations Act. Local 1078, International Union U.A.A. & A.I.W. of America v. Anaconda, 256 F.Supp. 686, 687 (D.Conn.1966), Metal Products Workers U., Local 1645, UAW–A.F.L.–C.I.O. v. Torrington Co., 242 F.Supp. 813, 818 (D.C.). See also Internat'l Ass'n of Mach. & A. Wkrs. v. General Elec. Co., 282 F.Supp. 413, 422 (N.D.N.Y.1968) and cases cited therein. However, plaintiff has failed to demonstrate that it is entitled to such relief here.

First, it appears inappropriate to grant as preliminary relief the two-fold request to vacate the arbitrator's award and to compel resubmission of the piece work rates to arbitration. A preliminary mandatory injunction is only granted in exceptional circumstances, such as where necessary to restore the status quo. The Arbitrator's award has been in effect for nearly two years. There is consequently no recently dis-

---

3. 9 U.S.C.A. § 10

"In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(a) Where the award was procured by corruption, fraud, or undue means.
* * * *"

turbed status quo to be restored pending a final hearing. Furthermore, the relief sought is final in its very nature. A court should not by mandatory injunction grant temporary relief which will dispose of the case on the merits. Dunn v. Retail Clerks International Ass'n, A.F.L.–C.I.O., Local 1529, 299 F.2d 873 (6th Cir. 1962).

Secondly, even if it were appropriate to grant the type of preliminary relief sought, plaintiff has failed to establish that it is entitled to such relief. Plaintiff has not demonstrated a reasonable likelihood that it would prevail on the merits in a final hearing. I.T.S. Industria Tessuti Speciali v. Aerfab Corp., 280 F.Supp. 581, 585 (S.D.N.Y.1967). The sole evidence offered in support of the contention of fraud is the substantial progressive increase in hourly production which began to occur several months subsequent to the Arbitrator's award. While plaintiff urges the Court to conclude from this evidence that hourly production was intentionally reduced to below normal during the period when the piece work rate was being established, it may be just as easily concluded that, subsequent to the award, plaintiff's employees have responded to the incentive of the piece work rate by increasing productivity to its maximum. Absent the testimony of a time study expert or other qualified person to the effect that the present percentage of increase in hourly productivity could not have been achieved absent the "pegging" of production prior to the establishment of the piece work rate, the Court will not infer the existence of fraud upon the evidence before it.

This opinion shall constitute the Court's findings of fact and conclusions of law as provided in Rule 52 of the Federal Rules of Civil Procedure.

### ORDER

Now, this 22 day of September 1970, after hearing, it is hereby ordered that plaintiff's request for a preliminary injunction be and the same is hereby denied.