## MORRIS CHALFEN v. MEDICAL INVESTMENT CORPORATION AND ANOTHER.

210 N. W. 2d 216.

August 17, 1973—Nos. 43763, 44088.

*Gislason, Alsop, Dosland & Hunter* and *Sidney P. Gislason,* for appellant and relators.

*Leonard, Street & Deinard, Harold D. Field, Jr., Nancy C. Dreher,* and *Richard Meshbesher,* for respondent.

OTIS, JUSTICE.

There are two proceedings before the court for resolution: (1) An appeal by defendant Medical Investment Corporation (Medicor) from an order dated April 12, 1972, directing it to register five notes in plaintiff's name; and (2) an alternative writ of prohibition issued by this court on December 1, 1972, restraining the trial court from enforcing an order dated November 22, 1972, directing the clerk of court to deliver the notes to plaintiff. We affirm the order of April 12, 1972, and discharge the alternative writ of prohibition which enjoined enforcement of the order of November 22, 1972.

This litigation stems from a covenant not to compete arising out of the sale of an ice show known as Holiday on Ice, Inc., by Madison Square Garden Corporation and plaintiff, Morris Chalfen, to General Ice Shows, Inc., a subsidiary of Medicor.

That covenant is in the following language:

"We [Madison Square Garden Corporation and plaintiff], directly or indirectly, own the capital stock of Holiday on Ice, Inc., a New York corporation ("Holiday"). In connection with your having purchased an option to acquire substantially all of the

assets of Holiday pursuant to an Agreement dated the date hereof among Holiday, Medical Investment Corporation, a Minnesota corporation, and General Ice Shows, Inc., a Minnesota corporation (the "Agreement"), and as an inducement to you to purchase the aforesaid assets, we hereby warrant and represent to you that if you purchase the aforesaid assets and perform all your obligations under the Agreement, neither of us shall, without your consent or the consent of your successors or assigns, for a period of ten years after the Delivery Date, as defined in the Agreement, invest or engage directly or indirectly in the production, presentation, ownership or operation of an ice show in the continental United States, Canada or Mexico, except for (i) ice shows presented at Madison Square Garden Center, and (ii) amateur ice shows or limited touring engagements in the continental United States, Canada or Mexico of the Moscow State Circus on Ice."

In August 1971, plaintiff purchased for the sum of $1,659,100 the following convertible subordinated notes issued by Medicor:

| Original Principal Sum | Original Owner | Original Issue Date |
|---|---|---|
| $2,000,000 | Fletcher Capital Funds, Inc. | July 17, 1968 |
| $ 500,000 | Scudder Duo Fund | December 20, 1968 |
| $ 950,000 | Putnam Vista Fund | December 20, 1968 |
| $ 300,000 | TMR Appreciation Fund, Inc. | December 20, 1968 |
| $ 300,000 | O'Neil Fund | December 20, 1968 |

On January 24, 1972, plaintiff brought this action against Medicor and its president, Thomas K. Scallen, seeking the following relief: First, to require Medicor to register plaintiff's notes in his name, which Medicor had refused to do; second, to restrain Scallen from interfering with that registration; third, to recover damages from Scallen for the sale of 400,000 shares of Medicor stock to one Arthur Wirtz at a price alleged to be 10 percent of its value; fourth, a declaratory judgment that Medicor is in violation of the $20,000,000 debt limit prescribed by the

notes. In their answer, defendants allege that Medicor owns as one of its subsidiaries General Ice Shows, Inc. (Shipstad's & Johnson's Ice Follies); that plaintiff has violated his covenant not to compete; and that by acquiring the notes plaintiff acquired conversion rights which would permit him to become the largest stockholder of Medicor and to gain control of the company. Accordingly, defendants seek to enjoin the transfer of the notes to plaintiff's name and to recover damages.

On plaintiff's motion for a temporary injunction, the court found that plaintiff had fully complied with Minn. St. 336.8-401(1);[1] that there was a strong likelihood plaintiff would prevail on the merits; and that failure to grant the injunction would cause him irreparable harm. Medicor appeals from that part of the order which provides as follows:

"Medicor (Medical Investment Corporation) be, and it hereby is (a) restrained and enjoined from continuing to refuse to register the transfer to plaintiff of said five Medicor Convertible Subordinated Notes, and (b) directed and required forthwith to register the transfer of said five Medicor Convertible Subordinated Notes to plaintiff, and to issue new notes payable to plaintiff Morris Chalfen in the respective principal amounts remaining unpaid upon said five Convertible Subordinated Notes."

Medicor subsequently deposited with the clerk of court for safekeeping the five new convertible subordinated notes payable

---

[1] Minn. St. 336.8—401(1) provides: "(1) Where a security in registered form is presented to the issuer with a request to register transfer, the issuer is under a duty to register the transfer as requested if

"(a)  the security is endorsed by the appropriate person or persons (section 336.8—308); and

"(b)  reasonable assurance is given that those endorsements are genuine and effective (section 336.8—402); and

"(c)  the issuer has no duty to inquire into adverse claims or has discharged any such duty (section 336.8—403); and

"(d)  any applicable law relating to the collection of taxes has been complied with; and

"(e)  the transfer is in fact rightful or is to a bona fide purchaser."

to plaintiff. Defendants sought an order restraining plaintiff from selling the notes or converting them into common stock or, in the alternative, to have the clerk retain the notes in his custody during the pendency of the action. The court denied their motion and on November 22, 1972, ordered the clerk of court to deliver the new notes to plaintiff. The alternative writ of prohibition here for disposition followed.

On May 7, 1973, plaintiff moved this court for an order requiring defendants to file a supersedeas bond in the sum of $3,650,000. That motion is rendered moot by the filing of this opinion. However, the facts disclosed in support of the motion are significant. Defendant Scallen was, on April 10, 1973, convicted in a British Columbia criminal court of the theft of $3,000,000 from Northwest Sports Enterprises, Ltd., a subsidiary of Medicor, and was sentenced on two counts to concurrent terms of 4 years in prison.[2] Scallen has been released on bond pending appeals which he has taken. In an affidavit filed to obtain release on bail, Scallen stressed to the court the urgency of his being available to attend to the affairs of Medicor, lest "innocent shareholders and persons holding convertible notes" be exposed to "serious prejudice and financial loss." According to an affidavit filed by counsel for plaintiff, Medicor has increased its indebtedness to the Bank of British Columbia to the total sum of $5-1/2 million and has given as security all of its stock in five subsidiaries.

The defendants here argue that by granting the temporary injunction the trial court has, in effect, provided plaintiff with the very relief which he seeks in the litigation, contrary to the rules applied in such cases as Dunn v. Retail Clerks International Assn. Local 1529, 299 F. 2d 873 (6 Cir. 1962); Iron City Industrial Cleaning Corp. v. Local 141, Laundry & D. C. I. Union, 316 F. Supp. 1373 (W. D. Pa. 1970); and Rosenstiel v. Rosenstiel, 278 F. Supp. 794 (S. D. N. Y. 1967). It is the position of

---

[2] It appears that Scallen wrongfully diverted these funds from one Medicor subsidiary to another.

Medicor that because plaintiff has agreed not to "invest or engage" in the ownership of ice shows for a period of 10 years, plaintiff has forfeited the right to own or convert the notes which he has purchased. Plaintiff, on the other hand, argues that his covenant was not directed to Medicor but to a subsidiary; that covenants of this kind are not favored in the law; and that defendant did not raise the issue until 3 months after the purchases were made. Plaintiff further contends that if the agreement is one which promises not to invest rather than one which agrees not to compete, it is void as against public policy.

These issues we leave for decision by the trial court with the admonition that the matter be advanced for immediate trial. We recognize that under the rules adopted for testing the propriety of temporary injunctions, we have cited as a criterion "[t]he likelihood that one party or the other will prevail on the merits when the fact situation is viewed in light of established precedents fixing the limits of equitable relief." Dahlberg Brothers, Inc. v. Ford Motor Co. 272 Minn. 264, 275, 137 N. W. 2d 314, 321. The trial court found that this prerequisite had been met. Nevertheless, in affirming, we intimate no opinion as to how the issues should be decided. The facts are extremely complex and, of course, there is before us only documentary evidence and no transcript of any testimony. Without attempting to prejudge the merits in any manner, we leave to the trial court the problem of litigating the issues of fact and applying the applicable law.

In affirming the trial court and discharging the writ, we are influenced by the demonstrable potential harm to plaintiff balanced against the more speculative prospect of prejudice to defendants. There is merit in plaintiff's complaint that to deny him the rights of a registered owner would seriously jeopardize his investment of over a million and a half dollars. Obviously Medicor faces serious management problems if the conviction of its president is affirmed or he is committed to prison.

Plaintiff points to the following protections which would be

denied him if he were not accorded the rights of a registered owner:

"* * * [T]he right to receive quarterly unaudited financial statements and an officer's certificate regarding defaults, copies of Medicor's SEC filings and information sent to shareholders, and, as reasonably requested, further detailed financial information; notification of any authorization for the issue of new shares of stock of the company; notification of and the right to bar the sale of one of Medicor's principal assets, Shipstad's & Johnson's Ice Follies; and notification of any proposed registration of the company's stock and the right to 'piggyback' in any such registration."

On the other side of the coin, defendants call attention to the fact that plaintiff insists the notes are in default and are now due in full because of an acceleration provision. This defendants construe to indicate plaintiff's "intention to force the corporation into liquidation, which would be tantamount to bankruptcy." They represent that testimony will be offered showing plaintiff "has threatened to 'take over' and 'get control' of the company's ice shows, the operation of which is the source of its income."

As we have indicated, the trial court found that plaintiff had fully complied with the conditions of the statute which qualify him for asserting his right to delivery under Minn. St. 336.8—401. Since he has presented a prima facie case entitling him to have the certificates registered, we are of the opinion and hold that it was not an abuse of the trial court's discretion to permit the plaintiff to have the notes registered in his name and delivered to him by the clerk of court. It is difficult to understand how the temporary registration and possession of these notes will seriously prejudice defendants if it is ultimately decided that plaintiff has violated his covenant. On the other hand, unless plaintiff is permitted to exercise all of the rights for which he contracted in purchasing the notes, it is clear that in the present financial position of Medicor plaintiff's investment may, indeed, be in serious jeopardy. If, as we have directed, the matter is ad-

vanced for immediate trial, we are satisfied that the interests of all parties will remain secure.

The order of April 12, 1972, is affirmed, and the writ of December 1, 1972, is discharged.

MR. JUSTICE PETERSON took no part in the consideration or decision of this case.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.