**UNION TRAVEL ASSOCIATES,
INC., Appellant,**

v.

**INTERNATIONAL ASSOCIATES,
INC., Appellee.**

No. 13649.

District of Columbia Court of Appeals.

Argued Dec. 20, 1978.

Decided April 10, 1979.

Samuel Intrater, Washington, D.C., with whom Albert Brick, Washington, D.C., was on the brief, for appellant.

David J. Taylor, Washington, D.C., for appellee.

Before YEAGLEY and MACK, Associate Judges, and PRATT, Associate Judge, Superior Court of the District of Columbia.*

MACK, Associate Judge:

This is an appeal from an order of the trial court, granting appellee a motion for summary judgment, denying appellant the same, and awarding appellee a judgment of possession. Possession was granted over an area in the lobby of a hotel owned and operated by appellee. The area was used by appellant as a gift shop, pursuant to an agreement. Appellant now argues that the agreement established a lease (and not a license) between itself and appellee which is not unilaterally revocable by the landlord. We disagree, and affirm the trial court's decision.

The hotel in which appellant's gift shop was located is the International Inn at Thomas Circle. The written agreement, by which appellant occupied the area in question, was made in 1971. The original parties to the agreement were appellant and the Hotel Corporation of Washington (also known as Hotel Sonesta), the primary tenant and operator of the hotel prior to its sale to appellee. Under the terms of this "License" Agreement, appellant was per-

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a).

mitted, "for the convenience of the guests of the hotel," to conduct certain specified services in the lobby gift shop, including the sale of gifts, tobacco, packaged food, reading materials, and art work, as well as the dissemination of tour and travel information. The conditions under which appellant was to conduct those services included: "actively promot[ing] guest business for the hotel," providing Hotel Corporation of Washington (the "licensor") with a duplicate key to each entrance to the gift shop; not assigning its own interest (that of "licensee") under the agreement; and paying a fee of $500 each month to the "licensor." For its part under the agreement, the "licensor" was, "at its own expense, [to] keep the premises and appurtenances in a clean, sightly and healthful condition, and good order and repair." The agreement reserved to the licensor the following rights: "to use space in and through the premises for pipes, wires and conduits . . . whether the same is locked or not"; to approve or not the selection of appellant's gift shop employees; to regulate the appearance of all gift shop signs, merchandise, and fixtures; and to oversee the means by which appellant solicited business for the gift shop from hotel guests. The "licensor" also reserved the right to determine the scope of the agreement.

With respect to the permanency of the location in the hotel lobby of appellant's gift shop, the agreement stated that

Licensor may, at any time in its discretion, substitute for the premises (or for any premises substituted therefor) any other equivalent premises in the Hotel, with approval by Licensee of said substituted premises. Licensor shall give Licensee at least thirty (30) days notice in writing of its intention to make such substitution and of the date upon which it shall be made. Removal shall be at Licensor's expense and so as to cause the least interference reasonably possible with Licensee's business. In the event space is not suitable to Licensee, then the remainder of the lease is null and void from the time of removal of present quarters.

By its original terms, the agreement was to terminate on the last day of 1974, but by written addendum, it was extended until December 31, 1977. However, the agreement also provided that

If Licensor permanently closes down the Hotel or sells or transfers the same to a person or entity not affiliated with Sonesta International Hotel Corporation, Licensor may terminate this License without any liability to Licensee. If Licensor intends to close the Hotel temporarily, it shall give written notice to Licensee as to the period of such closing, and Licensee may within thirty (30) days, by written notice to Licensor, terminate this License without liability of either party.

Prior to suit in this case, the operation of the hotel in which the gift shop was located changed hands several times. In between the time the "License" agreement was made and the time of the addendum extending its effect, the lease under which Hotel Corporation of Washington operated as primary tenant of the hotel terminated. A new lease by the owners of the hotel was then executed with a new primary tenant, Thomas Circle Inn, Inc. That lease was terminated in 1974, when Thomas Circle Inn defaulted in the payment of its rent. Thereafter, the owners of the hotel operated it until it was sold to appellee in 1975. During the course of these changes in the management of the hotel, appellant continued to operate its gift shop there pursuant to the license agreement.

In 1975, appellee filed a petition for possession of that part of the hotel used by appellant as a gift shop. Appellee was awarded possession in 1977, and this appeal followed.

We find it well-settled that a license in realty, uncoupled with an interest, is terminated upon the sale or conveyance of that realty. *DeHaro v. United States,* 72 U.S. (5 Wall.) 599, 627, 18 L.Ed. 681 (1867); *Baltic Investment Co. v. Perkins,* 154 U.S. App.D.C. 380, 383, 475 F.2d 964, 967 (1973); *Zimmerman v. Summers,* 24 Md.App. 100,

124, 330 A.2d 722, 736 (1975); 2 G. Thompson, Commentaries on the Modern Law of Real Property § 717 (rev.perm.ed. 1939). We turn now, therefore, to the only relevant question in this case: Did the agreement of 1971 under which appellant operated the hotel gift shop confer upon appellant a license or a lease?[1] If the property privilege conferred was a *license,* then and only then, the sale of the hotel to appellee brought about its termination.

■ While in the past we have not had cause to comment on the constituent elements of a license as opposed to those of a lease, the general case law is clear as to this distinction. A license confers a privilege to occupy the land of another, and excuses certain acts done there which ordinarily would amount to a trespass.[2] Since a license confers a personal privilege to act, and not a present possessory estate,[3] it does not run with the land, and so is generally not assignable.[4] Because it is founded upon personal confidence, a license may be made orally *or* in writing.[5] Finally, a license need

not be conferred upon consideration[6] or rent,[7] and need not delineate the specific space to be occupied.[8] By contrast, a lease confers upon a tenant exclusive possession of the subject premises as against all the world, including the owner.[9] Since it confers an estate in land, a lease (whose term is greater than a year) must be in writing to satisfy the statute of frauds.[10] Moreover, a lease is generally specific as to the property marked for tenancy, the term of that tenancy, and the payment of rent.[11] The question of whether that which is conferred upon a party amounts to a license or a lease is usually one of fact;[12] however, where as in the instant case, the question turns on the construction of a written agreement, it is one of law for the court.[13]

■ Upon reviewing the agreement made in the instant case in light of the property law discussed herein, we find that it was "the manifest intent of the parties" to create a license in appellant, and not a lease. 2 G. Thompson, *supra* at § 712.

1. The agreement clearly did not create an irrevocable property privilege halfway between a license and a lease—namely, a license coupled with an interest. *See* 2 G. Thompson, *supra* at § 719. A license is not coupled with an interest unless there is owned by the licensee an interest in chattel on the property which exists independently of the license. Restatement of Property § 513 (1944). The ownership interest must exist as a *prerequisite* to the existence of a license coupled with an interest. *Id. See generally* 53 C.J.S. *Licenses* § 92 (1948). No such interest of appellant existed at the time the property privilege in the instant case was conferred.

2. *Akins v. County of Sonoma,* Cal.App., 55 Cal. Rptr. 785 (1966); *Hodgkins v. Farrington,* 150 Mass. 19, 22 N.E. 73 (1889); *Bateman v. Ursich,* 36 Wash.2d 729, 220 P.2d 314 (1950); *Conaway v. Time Oil Co.,* 34 Wash.2d 884, 210 P.2d 1012 (1949); *State v. Lake City Bowlers' Club, Inc.,* 26 Wash.2d 292, 173 P.2d 783 (1946). *See DeHaro v. United States, supra* ; 2 G. Thompson, *supra* at § 710, and cases cited therein; 3 H. Tiffany, The Law of Real Property § 829 (Supp.1978), and cases cited therein.

3. *E. g., Minnesota Valley Gun Club v. Northline Corp.,* 207 Minn. 126, 290 N.W. 222 (1940).

4. *DeHaro v. United States, supra; Lehman v. Williamson,* 35 Colo.App. 372, 533 P.2d 63

(1975); *Selvia v. Reitmeyer,* 295 N.E.2d 869 (Ind.App.1973).

5. *Sweeney v. Bird,* 293 Mich. 624, 292 N.W. 506 (1940); *Conaway v. Time Oil Co., supra;* Restatement of Property § 515 (1944).

6. *Sweeney v. Bird, supra.*

7. *Thayer v. Brainerd,* D.C.Mun.App., 47 A.2d 787 (1946).

8. *Tips v. United States,* 70 F.2d 525 (5th Cir. 1934); *Wash-O-Matic Co., Inc. v. 621 Lefferts Ave. Corp.,* 191 Misc. 884, 82 N.Y.S.2d 572 (Sup.Ct.1948).

9. *Bentley v. Palmer House Co.,* 332 F.2d 107 (7th Cir. 1964); *Tips v. United States, supra; Miller v. City of New York,* 15 N.Y.2d 34, 255 N.Y.S.2d 78, 203 N.E.2d 478 (1964).

10. *See* D.C.Code 1973, § 28–3501.

11. *Weiman v. Butterman,* 124 Ill.App.2d 246, 260 N.E.2d 321 (1970). *See Smith's Transfer & Storage Co., Inc. v. Hawkins,* D.C.Mun.App., 50 A.2d 267 (1946).

12. 53 C.J.S. *Licenses* § 83 (1948).

13. *Id.*

*First,* the agreement clearly did not grant appellant an estate in real property. Rather, it conferred upon appellant the limited privilege to occupy a portion of the hotel lobby so as to conduct certain *services* in connection with the operation of a gift shop. This privilege amounted to a non-leasehold business concession, allotted to a licensee by the primary tenant of the hotel, which was not binding on that tenant's successors in interest. *Senrow Concessions, Inc. v. Shelton Properties, Inc.,* 10 N.Y.2d 320, 222 N.Y.S.2d 329, 178 N.E.2d 726 (1961).[14] Moreover, while appellant received a right to occupy an area in the lobby of the hotel, the primary tenant reserved the right to use that area for "pipes, wires and conduits," and to enter upon that area to so use, "whether the same is locked or not."[15] The agreement also provided that the primary tenant retain certain controls over appellant's occupancy, with respect to employment of gift shop staff, regulation of gift shop signs, merchandise, and fixtures, and the overseeing of solicitation of gift shop business. It can hardly be concluded that the agreement gave to appellant the exclusive possession of the gift shop area as against all the world (including the primary tenant) which would have amounted to a leasehold.

*Second,* the agreement did not provide appellant with a specific space in the hotel lobby for the operation of its gift shop. Quite the contrary, it provided that the licensor might "at any time in its discretion, substitute for the premises . . . any other equivalent premises in the hotel." Should the licensee (*i. e.,* appellant) veto the move, the agreement further provided for immediate termination of any license at all. Such tenuousness in regard to the location of appellant's gift shop does not reflect the existence of a lease, which usually describes in some detail the area of tenancy.

*Third,* it is true that the agreement ambiguously contains some elements of a leasehold, specifically provisions for payment of rent and term of duration. However, the presence of neither of these elements persuade us that the privilege conferred was a lease. As to rent, we note that a license is generally revocable at will by the grantor even where it has been conferred upon good consideration. *Van Camp v. Menominee Enterprises, Inc.,* 68 Wis.2d 332, 228 N.W.2d 664 (1975). Therefore, the payment of rent in this case does not create an irrevocable property interest, such as a lease. With respect to the agreement's providing a term of years for its duration, we note that the *specific* revocation clause, the operation of which was conditioned on the sale of the hotel, acts to modify the *general* temporal length of appellant's privilege. 3 A. Corbin, A Comprehensive Treatise on the Rules of Contract Law § 547 (1960). We also note that revocation upon sale is a distinct element of a license, not a lease.

We hold, as a matter of law, that the written agreement in the instant case, taken as a whole, conferred upon appellant a license, which was revocable upon the hotel's sale to appellee.

*Affirmed.*

14. Indeed, the concession conferred in the instant case was even less of a privilege than the one granted in *Senrow Concessions.* In that case, the concession to operate certain services in a night club was made *exclusive* as to the licensee. Here, there is no mention in the agreement of exclusivity with respect to appellant's operation of a gift shop in the hotel lobby.

15. It should be remembered that the agreement entitled the primary tenant to a duplicate key for each entrance to the gift shop.