**EARTH PROTECTOR, INC.,**
et al., Appellants,

v.

**CITY OF HOPKINS,** Respondent,

**No. C7–91–606.**

Court of Appeals of Minnesota.

Sept. 10, 1991.

Lawrence J. Coleman, St. Paul, for appellants.

James R. Crassweller, Jonathan P. Scoll, Timothy J. Dolan, Doherty, Rumble & Butler, St. Paul, for respondent.

Tim Smith, Burnsville, for respondent.

Considered and decided by RANDALL, P.J., and HUSPENI and THOREEN *, JJ.

## JOHN F. THOREEN, Judge.

Appellant townhome owners and their negotiating agent challenge the order denying a temporary injunction sought to enjoin the remediation of an environmental problem involving the migration of methane gas from a former landfill on which a portion of the townhome common areas are located.

### FACTS

The Westbrooke Patio Homes Association (townhome association) of which appellant homeowners are a part, entered into a Remediation and Monitoring Agreement (agreement) with the city granting the city and its agents the right to enter upon the townhome premises for the purpose of removing solid material from the land, which had formerly been operated as a landfill, for the purpose of abating the migration of methane gas. On April 3, 1991, appellant homeowners, together with appellant Earth Protector, Inc., with which certain homeowners had contracted, moved the Henne-

pin County District Court for injunctive relief. Appellants sought to enjoin respondents City of Hopkins and Ames Construction, Inc. from commencing a methane gas remediation project (the project). The trial court denied appellants' motion. Appellants challenge the trial court's order, claiming the agreement effectively transferred an interest in land, thereby making the agreement the product of an *ultra vires* act by the townhome association board.

### ISSUES

1. Did the trial court abuse its discretion by improperly applying the factors controlling the issuance of a temporary restraining order or injunction?

2. Did the trial court abuse its discretion by determining the agreement between the townhome association and the city was valid?

### ANALYSIS

■ The sole issue for the appellate court on review of an appeal from an order denying a motion for a temporary restraining order is whether there was a clear abuse of the trial court's discretion. *Miller v. Foley*, 317 N.W.2d 710, 712 (Minn.1982). A temporary injunction should be granted only when it is clear that the rights of a party will be irreparably harmed before a trial on the merits is held. *Id.* The trial court must consider five factors before granting or denying a temporary restraining order or temporary injunction:

1. The relationship between the parties before the dispute arose;
2. The harm plaintiffs may suffer if the injunction is denied, compared to the harm inflicted on the defendant if the injunction is granted;
3. The likelihood that the party will prevail on the merits;
4. Public policy considerations; and
5. Administrative burden imposed on the court if the injunction issues.

*M.G.M. Liquor Warehouse Int'l, Inc. v. Forsland*, 371 N.W.2d 75, 77 (Minn.App. 1985) (citing *Dahlberg Bros., Inc. v. Ford*

---

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

*Motor Co.*, 272 Minn. 264, 274–75, 137 N.W.2d 314, 321–22 (1965)).

Appellants argue the trial court abused its discretion by improperly applying the factors controlling the issuance of the temporary injunction. Appellants contend they have satisfied all the requirements for a temporary injunction and that the trial court's failure to grant injunctive relief will result in the destruction of the subject matter of the dispute.[1] Appellants claim the trial court relied on errors of law in denying injunctive relief. However, we do not conclude that the court improperly applied the *Dahlberg* analysis or abused its discretion.

### Relationship Between the Parties Before Dispute Arose

Representatives of the city held a series of informational meetings with the residents of the townhome association while the project was being conceived and planned. The purpose of the meetings was to inform the residents of the progress of the project and to answer questions and react to the homeowners' concerns.

The trial court concluded the parties have had several years in which to resolve the difficulties created by the landfill. The record indicates the members of the townhome association had been advised of the details of the project a number of months before the agreement was executed.

### Irreparable Injury

■ A party seeking a injunctive relief must establish that the conduct of the defendant will cause an irreparable injury and that there is no adequate remedy at law. *Cherne Indus., Inc. v. Grounds & Assoc., Inc.*, 278 N.W.2d 81, 92 (Minn.1979). We conclude the trial court properly determined that appellants' injury was not irreparable and adequate remedies at law were available.

Appellants argue that release of noxious odors, together with the noise and vibration caused by construction equipment necessitated by the project, inflict an irreparable injury on them. We strongly disagree. Even if the minor disruptions in the townhome owners' lifestyles were to rise to the level of a substantial injury, which they do not, the disruptions are temporary. Appellants cannot reasonably contend to be irreparably harmed when, following completion of the project, their property will be returned to its prior state with its value enhanced by alleviation of the methane gas problem.

Further, appellants' claim that money damages are insufficient to compensate them for the inconvenience is without merit. Even if the residents elect not to accept payment[2] from respondents and sue for damages, an award which exceeds the reasonable rental value of appellants' home units, would sufficiently compensate the homeowners for the inconvenience suffered.

### Success on the Merits

■ For injunctive relief to issue it is necessary for the parties seeking relief to establish a likelihood of success on the merits. *Chalfen v. Medical Investment Corp.*, 297 Minn. 174, 179, 210 N.W.2d 216, 219 (1973). The validity of the agreement is controlled by the townhome association articles. Here, appellants have not shown that the agreement is the product of an *ultra vires* act by the board. Appellants contend the agreement entered into by the city and the townhome association is invalid because the agreement conveys the transfer of an interest in land, specifically, a *profit à prendre.* Appellants contend such a conveyance constitutes a "dedication or transfer" of the association's common areas under the townhome associations' ar-

---

1. By order dated April 29, 1991, this court required the parties to notify it if the appeal was rendered moot as a result of the completion of the project. The contract between the City of Hopkins and Ames Construction, Inc. called for completion of the project by June 5, 1991. At the time of oral argument, however, work on the project continues, although it appears to be substantially completed. In the face of conflict-

ing affidavits we are unable to determine from the record whether the issue is moot so as to render this opinion unnecessary.

2. Respondents have offered $1,250 per month, per unit, for temporary relocation costs and have offered $500 per month to residents who elect not to relocate.

ticles of incorporation that is ineffective unless assented to by a two-thirds vote of the association's members. We conclude, however, that the agreement conveys only a "temporary irrevocable license."

In *Hanson v. Fergus Falls Nat'l Bank, et al.*, 242 Minn. 498, 65 N.W.2d 857 (1954), the Minnesota Supreme Court determined that the assignment of hunting rights in a tract of land was a *profit à prendre*. The court stated:

> The right of hunting on premises is an incorporeal right growing out of the soil, referred to in law as a *profit à prendre*, and may be segregated from the fee of the land and conveyed ingross to one having no interest or ownership in the fee, and when so conveyed it is assignable and inheritable.

*Id.* at 507, 65 N.W.2d at 863 (emphasis added). The court focused on the taking of game from the land as a segregation of a valuable property interest. The court enumerated a number of items that, when appropriated from the land, constitute *profits à prendre*, including sand, ice, timber, oil, gas, coal, and minerals of all kinds. *Id.*, 65 N.W.2d at 863.

In *Minnesota Valley Gun Club v. Northline Corp.*, 207 Minn. 126, 129, 290 N.W. 222, 224 (1940), the Minnesota Supreme Court distinguished a *profit à prendre* from a license. The trial court indicated that "a license is not an estate but a permission giving the licensee a personal legal privilege enjoyable on the land." *Id.* at 128, 290 N.W. at 224. The court indicated that in contrast, a *profit à prendre* is more substantial and permanent. *Id.*

We refuse to equate the replacement of subsurface garbage with clean soil to the taking of valuable minerals from the land. Moreover, the limited relationship created by the agreement does not appear to satisfy the "permanent" relationship created by the grant of a *profit à prendre*. The approximate eight-week project appears to involve only a limited right of entry upon the land. The agreement, therefore, grants only what it purports to, a "temporary irrevocable license."

Because the right granted by the agreement grants only a license rather than a *profit à prendre*, the trial court did not err by determining that the agreement was not *ultra vires*. Appellants likelihood of success on the merits is doubtful.

*Public Policy*

 The trial court concluded that the policy of cleaning up a landfill on the state's "Superfund" list is a significant factor in denying appellant's motion for the temporary injunction. We agree.

Pursuant to the closure order entered into between the Minnesota Pollution Control Agency and the city, the city undertook an environmental study to investigate the impact of the methane gas migration on the townhomes adjacent to the landfill. The city determined it was necessary to remediate the problem and with the assistance of the MPCA, planned and implemented the project. It is difficult to argue that the project is not consistent with public policy or that such policy does not require the project to proceed.

*Administrative Burden*

As to this factor, we agree with the finding of the trial court, that even though the administrative burden may not be great, the other four factors weighed heavily in favor of the project being commenced without further delay.

## DECISION

The trial court did not abuse its discretion in denying the temporary injunction.

Affirmed.