R. James SWENSON, Appellant,

v.

Mark HOLSTEN, in his official capacity as Commissioner of the Minnesota Department of Natural Resources, et al., Respondents.

No. A09–1889.

Court of Appeals of Minnesota.

June 22, 2010.

Charles Schoenwetter, Michael R. Carey, Bowman & Brooke, Minneapolis, MN, for appellant.

Lori Swanson, Attorney General, Kimberly J. Middendorf, Assistant Attorney General, St. Paul, MN, for respondents.

Considered and decided by WRIGHT, Presiding Judge; ROSS, Judge; and HARTEN, Judge.*

## OPINION

WRIGHT, Judge.

In this appeal from summary judgment in favor of respondents, appellant argues that the district court erred by concluding that Minnesota's game and fish laws preclude a private individual such as appellant from acquiring a property interest in a dead black bear found on his property. We reverse and remand.

## FACTS

Appellant R. James Swenson owns a farm in Fifty Lakes, Minnesota. According to Swenson, on or about November 1, 2007, he found a dead black bear[1] on his property and contacted a taxidermist to have the skull and hide preserved for display. The taxidermist collected the bear carcass from Swenson's property and took it to his taxidermy shop. On April 7, 2008, Swenson contacted the taxidermist to inquire about his progress. Swenson also asked the taxidermist whether the Minnesota Department of Natural Resources (DNR) needed to be contacted about the bear carcass and whether the taxidermist had done so. The taxidermist replied that he had not contacted the DNR. On April 14, 2008, Swenson directed his attorney to contact Thomas Provost, a DNR law-enforcement supervisor, to report that Swen-

son had found the bear carcass. The following day, DNR conservation officer Cary Shoutz seized the bear carcass from the taxidermist's shop. Shoutz advised Swenson that the bear carcass had been confiscated and was the property of the state. Shoutz also issued a warning to Swenson for illegal possession of a wild animal in violation of Minn.Stat. § 97A.501, subd. 1 (2008).

Swenson subsequently initiated this action against the following respondents: DNR Commissioner Mark Holsten, in his official capacity; DNR law-enforcement supervisor Provost individually and in his official capacity; and DNR conservation officer Shoutz, in his official capacity. Swenson alleged that, when he discovered the bear carcass on his land and took possession of it, he acquired a property interest in the bear carcass. He further alleged that respondents improperly deprived him of that property interest by confiscating the bear carcass. Swenson sought a declaratory judgment recognizing his property interest and asserted claims of conversion, replevin, substantive and procedural due-process violations under 42 U.S.C. § 1983 (2006), and an unlawful taking under the Fifth Amendment to the United States Constitution.

Respondents moved for judgment on the pleadings. In opposing the motion, Swenson submitted his attorney's affidavit with exhibits, which the district court did not exclude. Swenson also moved for further discovery and argued that summary judgment was improper. In support of the discovery motion, Swenson submitted his affidavit. The district court entered judg-

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

1. The parties use the terms "bear," "remains," and "carcass" interchangeably to refer to the dead bear. Because the term "car-

cass" refers specifically to the "dead body of an animal," *The American Heritage Dictionary* 288 (3d ed.1992), we us that term to describe the dead bear at issue in this case and other dead animals.

ment in favor of respondents, concluding that all of Swenson's claims depend on proof of a property interest in the bear carcass and that Swenson failed as a matter of law to establish such a property interest because Minnesota's game and fish laws preclude a private property interest in wild animals. This appeal followed.

## ISSUE

Did the district court err by concluding that the game and fish laws preclude appellant's claim that he has a property interest in the bear carcass?

## ANALYSIS

When a motion for judgment on the pleadings is pending, if

> matters outside the pleadings are presented to and not excluded by the [district] court, the motion shall be treated as one for summary judgment and disposed of as provided for in [Minn. R. Civ. P. 56], and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion.

Minn. R. Civ. P. 12.03. Here, the district court did not expressly rule on the motion for further discovery. And it did not exclude the affidavit and exhibits that Swenson submitted. Accordingly, we review the district court's decision as granting summary judgment.

■ On appeal from summary judgment, we determine whether any genuine issues of material fact exist and whether the district court erred as a matter of law. *State by Cooper v. French*, 460 N.W.2d 2, 4 (Minn.1990). In doing so, we view the evidence in the light most favorable to the party against whom summary judgment was granted. *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn.1993).

■ Whether the game and fish laws preclude a private individual such as Swenson from acquiring a property interest in a bear carcass presents a question of statutory interpretation, which we review de novo. *Auto Owners Ins. Co. v. Perry*, 749 N.W.2d 324, 326 (Minn.2008). When interpreting a statute, we must "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2008). In doing so, we first determine whether the statute's language, on its face, is ambiguous. *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn.2001). A statute's language is ambiguous only when its language is susceptible of more than one reasonable interpretation. *Amaral v. Saint Cloud Hosp.*, 598 N.W.2d 379, 384 (Minn.1999). We construe words and phrases according to their plain and ordinary meaning. *Frank's Nursery Sales, Inc. v. City of Roseville*, 295 N.W.2d 604, 608 (Minn. 1980); *see also* Minn.Stat. § 645.08(1) (2008) (providing that words are construed according to their common usage). When the legislature's intent is clearly discernible from a statute's unambiguous language, we interpret the language according to its plain meaning without resorting to other principles of statutory construction. *State v. Anderson*, 683 N.W.2d 818, 821 (Minn.2004).

■ The legislature has codified in the game and fish laws the common-law principle that "[t]he ownership of wild animals of the state is in the state, in its sovereign capacity for the benefit of all the people of the state." Minn.Stat. § 97A.025 (2008); *State v. Rodman*, 58 Minn. 393, 400, 59 N.W. 1098, 1099 (1894) (stating common-law principle). Accordingly, a person "may not acquire a property right in wild animals, or destroy them, unless authorized under the game and fish laws" or other specifically enumerated statutes. Minn.Stat. § 97A.025. The legislature also

has specifically protected certain animals, Minn.Stat. § 97A.015, subd. 39 (2008), and requires a license before an individual may "take, buy, sell, transport, or possess protected wild animals," Minn.Stat. § 97A.501, subd. 1 (2008); *see* Minn.Stat. § 97A.405, subd. 1 (2008). A bear is a protected wild animal under the game and fish laws. Minn.Stat. § 97A.015, subds. 3, 39 (2008). Swenson does not dispute the validity of these provisions or the fact that he neither applied for nor had a license to possess a bear. Rather, he contends that, when a bear dies naturally, it no longer is a "wild animal" subject to these provisions.

■ The game and fish laws define "wild animals" as "all *living* creatures, not human, wild by nature, endowed with sensation and power of voluntary motion." *Id.*, subd. 55 (emphasis added). The plain language of Minn.Stat. §§ 97A.025, 97A.405, subd. 1, 97A.501, subd. 1, refers only to "wild animals." Thus, when applying the statutory definition to possession and ownership of wild animals, the provisions at issue apply only to living animals.[2] Respondents contend that those provisions also apply to the bear carcass at issue here because any "provision relating to a wild animal applies in the same manner to a part of the wild animal." *See* Minn.Stat. § 97A.021, subd. 3 (2008). But Minn.Stat. § 97A.021 is subject to the same definition of "wild animal" as Minn.Stat. §§ 97A.025, 97A.501, subd. 1. *See* Minn.Stat. § 97A.015, subd. 1 (2008) (providing that definitions apply to all provisions of game and fish laws). The provisions regarding the possession and ownership of wild animals, therefore, are limited to living animals and parts taken from living animals, such as feathers, antlers, or teeth. *Cf.* Minn.Stat. § 97B.22 (2008) (permitting collection of shed antlers but prohibiting artificial removal of antlers).

The provisions of the game and fish laws limiting personal property rights in the carcass of a wild animal applies only when a private individual "takes" a wild animal. As defined by statute, to "take" a wild animal is to pursue, shoot, kill, capture, trap, snare, or net it, or to attempt to do so. Minn.Stat. § 97A.015, subd. 47 (2008). The game and fish laws permit a private individual to take a wild animal if the individual has a license and properly affixes a tag to the carcass. *See* Minn.Stat. §§ 97A.535, subd. 1 (requiring tag for carcass of taken wild animal), 97B.401, subd. 1 (requiring license for taking bear) (2008). Thus, by operation of law, taking a wild animal in compliance with these statutory requirements eliminates the state's property rights in that animal and endows the individual who takes the animal with property rights in the carcass. *See* Minn.Stat. § 97A.501, subd. 1 (recognizing that state's ownership of a wild animal ends when animal is "lawfully acquired"); *see also Rodman*, 58 Minn. at 400, 59 N.W. at 1099 (stating that one acquires right of property in "game" by "reducing it to possession"). But by their plain language, these provisions apply only to the carcasses of wild animals that died at the hands of humans.

The carcasses of wild animals that died naturally fall outside the plain language of these provisions. They no longer are "living creatures" subject to the state's ownership or the attendant restrictions on private possession. They also do not fall within the provisions of the game and fish

2. We observe that Minnesota's game and fish laws are distinguishable from those of our neighbor Wisconsin in an important respect for our analysis here. In contrast to Minnesota's regulation of the possession of "wild animals" as defined by Minn.Stat. § 97A.015, subd. 55, Wisconsin regulates the possession of both the "wild animal" and the "carcass." *See* Wis. Stat. § 29.011(2) (2008).

laws that govern the taking of wild animals and, consequently, are not subject to the licensing and tagging requirements of those provisions. Accordingly, the game and fish laws do not restrict a private individual's possession of the carcasses of wild animals that died naturally.

In the absence of applicable legislation, common-law property principles govern claims of property interests in the carcass of a wild animal that died naturally. One who can demonstrate that he or she lawfully took possession of the carcass of an animal that died naturally may establish a property interest in the carcass. *See Rodman,* 58 Minn. at 400, 59 N.W. at 1099 (stating that one acquires right of property in "game" by "reducing [it] to possession"); *see also Minn. Valley Gun Club v. Northline Corp.,* 207 Minn. 126, 129, 290 N.W. 222, 224 (1940) (stating that landowner "has the exclusive right to reduce game to possession"); *cf. Harding County v. Frithiof,* 575 F.3d 767, 777 (8th Cir.2009) (citing *Black Hills Inst. of Geological Research v. S.D. Sch. of Mines & Tech.,* 12 F.3d 737, 741–42 (8th Cir.1993)) (holding that fossils could be personal property after removed from ground).

Respondents counter that permitting unlicensed possession of the carcass of a protected wild animal "would be nothing more than an invitation to poach and directly contrary [to] the purpose of game and fish law[s]." But respondents' arguments about these concerns are unavailing in light of the plain language of the game and fish laws, which demonstrates the legislature's intent to limit the state's property interest to living animals. *See Anderson,* 683 N.W.2d at 821 (stating that a statute's plain language is the only consideration if legislature's intent is discernible from that language). Indeed, interpreting the game and fish laws not to apply to a carcass is not necessarily incon-sistent with the protective purpose of the game and fish laws and may alleviate other concerns that could arise if the state had an ownership interest in a carcass, such as an obligation to remove that carcass if a wild animal dies on private property. These policy concerns are appropriately addressed to the legislature.

Respondents also argue that, even if one may acquire a personal property interest in a carcass after an animal dies naturally, Swenson failed to allege or proffer any evidence tending to establish that the bear in question died of natural causes. In essence, respondents argue that summary judgment in their favor was otherwise proper because Swenson has not alleged a cause of death or put forth evidence demonstrating a genuine issue of fact regarding the bear's cause of death. *See Myers ex rel. Myers v. Price,* 463 N.W.2d 773, 775 (Minn.App.1990) (stating that we will affirm a grant of summary judgment "if it can be sustained on any grounds"), *review denied* (Minn. Feb. 4, 1991). We disagree.

■ First, Swenson's allegations are sufficient. Swenson alleges that he "discovered the remains" of a black bear and acquired a property interest in the bear carcass when he took possession of it, articulating the same argument regarding the definition of "wild animals" that he presents in this appeal. Swenson also alleges, in support of his section 1983 due-process claim, that "[n]o reasonable DNR officer could interpret Minnesota's game and fish laws to grant the State a property interest in the remains of animals that die of natural causes on private property." When Swenson's complaint is viewed as a whole, it is sufficient to put respondents on notice that Swenson claims the bear died naturally. *See Donnelly Bros. Constr. Co. v. State Auto Prop. & Cas. Ins. Co.,* 759 N.W.2d 651, 660 (Minn.App.2009) (stating that Minnesota is a notice-pleading state,

requiring only "information sufficient to fairly notify the opposing party of the claim against it"), *review denied* (Minn. Apr. 21, 2009); *see also Hoffman v. N. States Power,* 764 N.W.2d 34, 45 (Minn. 2009) (stating that complaint is viewed liberally on motion for judgment on pleadings).

Second, whether the bear died of natural causes is a disputed fact question. Swenson submitted to the district court his correspondence with DNR in which he expressed his belief that the bear died naturally. Swenson also submitted his affidavit, which asserts that, as an experienced hunter, he did not discern any markings on the animal indicating that it had been killed and that he deduced from that fact that the animal died naturally. Respondents contend that Swenson's affidavit is not part of the record because it was submitted in support of Swenson's motion for further discovery, rather than attached to Swenson's memorandum opposing respondents' motion. But the record reflects that Swenson moved for further discovery based on his assertion that genuine issues of material fact regarding the cause of the bear's death preclude summary judgment. Although the district court declined to consider Swenson's affidavit because it viewed the bear's cause of death as immaterial under its analysis, that decision does not mean that Swenson's affidavit was not properly before the district court. Because the correspondence and Swenson's affidavit are sufficient to demonstrate a genuine issue of material fact regarding the bear's cause of death, summary judgment was improperly granted. Therefore, we reverse the district court's entry of summary judgment and remand for further proceedings.

## DECISION

The game and fish laws do not preclude acquisition of a private property interest in the carcass of a wild animal that died naturally. The district court, therefore, erred by concluding that Swenson's claims failed, as a matter of law, for inability to establish a property interest in the bear carcass.

**Reversed and remanded.**